LEVIN H. CAMPBELL, Chief Judge.
 

 This is an appeal from a bankruptcy court’s award of damages to a debtor, Ana de Jesus Saez (“de Jesus”), based upon the harm she suffered when a secured creditor, George Rieckehoff, sold her house in purported violation of the automatic stay provisions of the Bankruptcy Act of 1978, 11 U.S.C. § 362. The bankruptcy court’s order awarding damages was sustained on appeal by the United States District Court for the District of Puerto Rico. We reverse.
 

 I.
 

 De Jesus and her husband purchased a house in 1976. The house became hers in 1979 after their divorce. In February 1980 she borrowed $5,500 from Rieckehoff, giving a junior mortgage on her house as security. By June 1980, de Jesus, who says she is disabled and unemployed, had fallen behind on her loan payments, and Riecke-hoff began foreclosure proceedings in a local Puerto Rico court. In December 1980, Rieckehoff obtained a default judgment against her.
 

 On January 30, 1981, de Jesus, represented by counsel, petitioned the bankruptcy court for relief in accordance with chapter 13. This petition triggered the provisions of 11 U.S.C. § 362, staying automatically any proceedings by creditors such as Riec-kehoff to levy on security in the hands of the debtor. Rieckehoffs attorney, however, apparently did not learn of the bankruptcy proceeding until sometime on April 1, 1981.
 
 [1]
 
 Earlier that day, pursuant to per
 
 *850
 
 mission received from a local Puerto Rico court, Rieckehoff allowed a public auction of de Jesus’s house to be held. No sale occurred only because no one offered the minimum bid.
 

 A few days later Rieckehoff petitioned the bankruptcy court for relief from the automatic stay so as to allow him to hold a second auction of the house on May 2, a date later rescheduled by the sheriff to May 14. The bankruptcy court denied Riecke-hoff’s request for relief from the stay on April 30, 1981, but set a further hearing on the same request for May 28, 1981.
 

 De Jesus was less than diligent in pursuing her chapter 13 proceeding. Neither de Jesus nor her attorney appeared at creditors’ meetings scheduled for April 2 and, again, on April 30. Consequently, the creditors present recommended that her petition be dismissed. 11 U.S.C. § 1307(c). On May 6, 1981 the bankruptcy court announced that it would dismiss de Jesus’s bankruptcy petition for failure to prosecute. Notice of this action was sent out on May 7. The actual order of dismissal was entered on May 11, 1981. Two days later, on May 13, de Jesus filed a motion for reconsideration of the dismissal.
 
 [2]
 
 According to Rieckehoff, the motion was never served upon him, and he did not hear of the motion until early in June. No proof of service or the like has been called to our attention to show that service was, in fact, ever made either on Rieckehoff or other parties.
 
 [3]
 
 On May 14, the scheduled auction of de Jesus’s house took place. The house was sold to Carlos Mártir Santiago. On June 1, 1981 de Jesus filed a further motion in which she informed the court that the May 14 auction had been held without notice to her. A copy of this motion was received by Riecke-hoff’s attorney on June 7 or 8. Shortly thereafter, on June 15, Carlos Mártir Santiago resold the house to his nephew, Luis Mártir Lugo.
 

 On June 16, 1981, after a hearing, the bankruptcy court allowed de Jesus’s motion to reconsider the dismissal of her bankruptcy petition. On August 14 the court issued a memorandum opinion and order voiding the May 14 sale of de Jesus’s house, which is reported as
 
 In re Saez,
 
 13 B.R. 605 (Bkrtcy.D.P.R.1981). This order precipitated the action now before this court. On September 25 Mártir Lugo initiated an adversary proceeding in the bankruptcy court to quiet title to de Jesus’s house or, in the alternative, to obtain damages from Rieckehoff for breach of warranty. Rieckehoff cross-claimed against de Jesus, in essence, for indemnity. De Jesus crossclaimed against Rieckehoff, charging that he had “maliciously persecuted” her, causing her mental anguish. On March 31, 1982, after a one-day trial, the bankruptcy court dismissed Mártir Lugo’s claim for lack of ripeness and Rieckehoff’s on the merits. It awarded damages and attorneys’ fees to de Jesus to compensate her for injuries arising from Rieckehoff’s “intentional acts.” It is from the latter award that Rieckehoff appeals.
 

 II.
 

 At the June 16, 1981 hearing and thereafter, Rieckehoff strenuously challenged the bankruptcy court’s right to entertain de Jesus’s motion to reconsider its dismissal of her chapter 13 petition. Rieckehoff argued that de Jesus’s failure to serve the motion to reconsider within ten days after entry of the judgment of dismissal, as required under Bankr.R. 923,11 U.S.C., caused the motion to fail, with the result that the court lacked jurisdiction over both the bankrupt
 
 *851
 
 cy case and all ensuing adversary proceedings
 
 (viz.,
 
 from Mártir Lugo’s quiet title action to de Jesus’s present damages cross-claim).
 

 The bankruptcy court disagreed. Because, in its view, Bankr.R. 762, 11 U.S.C., extended the automatic stay for ten days after the dismissal,
 
 [4]
 
 the sale of de Jesus’s house on May 14, three days after the dismissal, was held to be in flagrant violation of the stay. The court saw its authority to restore the status quo and afford redress to de Jesus as stemming from its power to enforce the stay. In its March 31, 1982 opinion the court concluded that any failure by de Jesus to serve her motion for reconsideration
 

 has no relevancy at all. What is really important is that [Rieckehoff] took affirmative actions in the foreclosure case even though there was a pending bankruptcy case .... Even if he was not notified, (and we have serious doubts as to whether he had to be under the circumstances of this case), he should have waited the 10 days.
 

 On appeal to the district court Rieckehoff again unavailingly argued that de Jesus’s failure to serve the motion to reconsider had deprived the court of jurisdiction. The district court concluded, “[T]he consequences of failure to serve depend on the nature of the pleading in question. Wright & Miller,
 
 4 Federal Practice and Procedure:
 
 Civil Sec. 1143 (1969). Under no circumstance^] does failure to serve a motion for reconsideration deny the Court jurisdiction.” Following Rieckehoff’s motion to reconsider, the district court reiterated, “Unquestionably, although it would have been better to serve the motion here in question, considering the totality of the circumstances and the fact that the Bankruptcy Court still had jurisdiction because the stay remained in effect for 10 days after the dismissal, the lack of service is not fatal.”
 

 III.
 

 While we understand the bankruptcy court’s wish to discourage conduct which it thought ran contrary to the automatic stay, we believe that it erred in its major premise,
 
 i.e.,
 
 that Bankr.R. 762, 11 U.S.C., caused the automatic stay to continue in effect for ten days after the May 11 dismissal of de Jesus’s chapter 13 petition. For this and other reasons discussed below, we reverse the award of damages to de Jesus.
 

 We begin by noting that, unless extended by Rule 762 or in some other manner, an automatic stay must plainly terminate upon dismissal of the petition giving rise to it. Section 362(c) provides that the stay continue as to creditor conduct not directed against property of the estate, only until dismissal, and as to conduct directed against such property, only so long as it remains in the estate. It seems self evident that there is no “estate” and hence no “property of the estate” unless there is an existing petition. Dismissal of the petition, therefore, would ordinarily terminate the stay as well. Such immediate termination of the stay, moreover, coincides with the thrust of section 349(b), governing the effect of dismissals. That section provides that, unless otherwise ordered, dismissal of a case
 

 (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.
 

 As the Senate Report explains, “the basic purpose” of dismissals.is “to undo the bankruptcy case as far as practicable . .. . ” S.Rep. No. 989, 95th Cong., 2d Sess. 49,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad. News 5787, 5835. Insofar as continuation of the stay prevents a secured creditor from exercising his security interest, it plainly impairs the property interests he had before the filing of the debtor’s petition.
 
 Cf.
 
 12
 
 Collier on Bankruptcy
 
 ¶ 401.4 (14th ed. 1978).
 

 
 *852
 
 Bankruptcy Rule 762 does not alter the effect of section 362(c) in the present circumstances. Rule 762 merely states that Fed.R.Civ.P. 62, containing provision for a 10-day stay, “applies in adversary proceedings.” But de Jesus’s chapter 13 petition was not an adversary proceeding. That term of art encompasses a distinct subset of bankruptcy litigation, including
 

 any proceeding instituted by a party before a bankruptcy judge to (1) recover money or property, other than a proceeding under Rule 220 or Rule 604, (2) determine the validity, priority, or extent of a lien or other interest in property, (3) sell property free of a lien or other interest for which the holder can be compelled to take a money satisfaction, (4) object to or revoke a discharge, (5) obtain an injunction, (6) obtain relief from a stay as provided in Rule 401 or 601, or (7) determine the dischargeability of a debt.
 

 Bankr.R. 701, 11 U.S.C. Adversary proceedings also include matters “before a bankruptcy judge for legal, equitable, or declaratory relief ... aris[ing] under non-bankruptcy law .... ” Interim Bankruptcy R. 7001.
 

 To be sure, Rules 121 and 914 extend the application of Rule 762 beyond adversary proceedings. But none of the matters encompassed by those rules are material here. Rule 121 provides that Rule 762 will apply in “all proceedings relating to a contested petition and ... to vacate an adjudication,” and Rule 914 makes Rule 762 applicable in “all contested matters, unless the court otherwise directs.” Here, however, the dismissal did not arise from a contest over de Jesus’s eligibility for chapter 13 relief or the like. Rather, de Jesus’s petition was dismissed simply for her failure to prosecute her case in a diligent manner. Under these circumstances, the rules did not require creditors to delay further from exercising their pre-petition rights. We hold, therefore, that the courts below erred in ruling that the automatic stay continued for ten days beyond the May 11 dismissal.
 

 The absence of an automatic stay at the time of the May 14 sale of the house removes the principal underpinnings from the bankruptcy court’s award of damages and counsel fees to de Jesus. In awarding damages for mental anguish, the court stated: “No one loses his home and gets involved in discussions ... trying to recuperate a property without suffering mental anguish.” The court was thus principally concerned with redressing the May 14 sale. And if that sale
 
 had
 
 occurred while the automatic stay was in effect, the court might well have had authority to compensate de Jesus for damages she suffered from violation of the stay. Actions taken in defiance of automatic stays have been treated as civil contempts, redressable as such to the injured parties.
 
 See, e.g., In re Carter,
 
 691 F.2d 390 (8th Cir.1982);
 
 Borg-Warner Acceptance Corp. v. Hall,
 
 685 F.2d 1306, 1309 (11th Cir.1982);
 
 Fidelity Mortgage Investors v. Camelia Builders, Inc.,
 
 550 F.2d 47, 52-53 (2d Cir.1976),
 
 cert. denied,
 
 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977);
 
 In re Miller,
 
 22 B.R. 479, 481 (Bkrtcy.D.Md.1982).
 
 [5]
 
 And it may also be, although we need not now decide the issue, that the court had jurisdiction to entertain a civil contempt proceeding grounded on purported violation of the automatic stay even after the chapter 13 petition was dismissed and even though de Jesus’s motion to reconsider was unavailing because unserved (see below).
 
 Cf. Backo v. Local 281, United Brotherhood of Carpenters,
 
 438 F.2d 176, 182 (2d Cir.1970),
 
 cert. denied,
 
 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 99 (1971) (proceeding for compensatory, but not coercive, civil contempt may
 
 *853
 
 continue after final judgment in underlying litigation). But the sale did not, in fact, violate any outstanding stay; hence the award of damages and counsel fees cannot be upheld as civil contempt damages intended to redress a sale of the debtor’s property in violation of a stay.
 

 We recognize that the bankruptcy court rested its award against Rieckehoff not only upon the sale of the house in purported violation of the automatic stay but also upon his prior preparations and attempt at sale during the pendency of de Jesus’s petition, when the automatic stay clearly was in effect. But, the present judgment cannot be upheld on those bases either.
 

 First, it is obvious that at least the present award cannot stand, since the bankruptcy court cannot be presumed to have intended the same redress for earlier unconsummated acts as for the actual sale of the house.
 

 Second, we do not believe that the earlier acts, standing alone, support an award of compensatory damages to de Jesus.
 

 With respect to the abortive April 1 auction, the record shows no evidence of actual damage to de Jesus from that event. Civil contempt proceedings are limited to redressing actual injury of those harmed by the contemnor’s conduct.
 
 United States
 
 v.
 
 United Mine Workers,
 
 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947);
 
 Ramos Colon v. United States Attorney for the District of Puerto Rico,
 
 576 F.2d 1, 4-5 (1st Cir.1978). Furthermore, de Jesus did not establish that Rieckehoff knew of the chapter 13 proceeding before the abortive April 1 auction.
 
 See
 
 note 1,
 
 supra.
 
 If he did not know before then, he would not be accountable in civil contempt for de Jesus’s personal anguish, if any.
 
 See In re Smith Corset Shops, Inc.,
 
 696 F.2d 971, 977 n. 7 (1st Cir.1982);
 
 Perfect Fit Industries v. Acme Quilting Co.,
 
 646 F.2d 800, 808 (2d Cir.1981).
 

 It is a closer question whether Riec-kehoff could be deemed to have contemptuously violated section 362 by proceeding, after learning of the chapter 13 petition, to schedule the sheriff’s sale for May 2 and finally for May 14. Rieckehoff did, however, petition the bankruptcy court to lift the stay and we have no reason to imagine he would have proceeded with the auction had the chapter 13 petition not been dismissed. Similar actions were held not to have violated the automatic stay in
 
 In re Roach,
 
 660 F.2d 1316 (9th Cir.1981). Like the creditor in
 
 Roach,
 
 Rieckehoff did little more than reschedule the auction and advertise the new date from the time he learned of the petition until its dismissal. It was not shown that these preparatory acts either harassed de Jesus or revived “the financial pressures that drove [her] into bankruptcy.” S.Rep. No. 989, 95th Cong., 2d Sess. 54,
 
 reprinted in
 
 1978 U.S. Code Cong. & Ad.News 5787, 5840-41.
 
 Cf. In re Demp,
 
 23 B.R. 239 (Bkrtcy.E.D.Pa.1982) (awarding attorneys’ fees, but not damages, against creditor who posted notice of sheriff’s sale on debtor’s house). And finally, de Jesus’s failure to pursue her own petition diligently further detracts from the equity of a claim based on Rieckehoff’s continuance of preparations for a sale which occurred only after lapse of the stay.
 

 We recognize that the parties have treated the award in this case not as a civil contempt but as in compensation for some undefined intentional or negligent tort under Puerto Rico law. They have done so even though the bankruptcy court made no reference to such a tort, but rather emphasized Rieckehoff’s “contemptuous behavior towards this court, its function, and the clearly expressed mandate of Congress in Sec. 362” and its concern for “the words and spirit of the Bankruptcy Law.”
 

 Even assuming, however, that the award to de Jesus did, in fact, rest on a Puerto Rico tort theory, we would still reverse. First, the same infirmities we have observed relative to a finding of civil contempt — particularly the absence of the automatic stay after May 11 — would bar such a claim. Second, and even more conclusively, the bankruptcy court lacked jurisdiction after May 11 to entertain a tort claim, which could only proceed in the context of an adversary proceeding adjunct to an ex
 
 *854
 
 tant bankruptcy petition. Bankr.R. 701
 
 et seq.
 
 Here de Jesus’s chapter 13 petition had been dismissed; its revival was dependent on the vitality of de Jesus’s motion to reconsider. While the court purported to allow the motion, de Jesus had failed to comply with the service requirements of Fed.R.Civ.P. 59(e) as incorporated by Bankr.R. 923.
 
 See
 
 note 2,
 
 supra.
 
 These requirements have been labelled “mandatory and jurisdictional” by the Supreme Court.
 
 Browder v.
 
 Director,
 
 Illinois Department of Corrections,
 
 434 U.S. 257 at 272-73, 98 S.Ct. 556 at 565, 54 L.Ed.2d 521. It follows that allowance of the infirm motion could not restore the court’s jurisdiction over the chapter 13 petition. The court was, therefore, powerless to entertain de Jesus’s damages claim if viewed simply as a Puerto Rico tort claim cognizable in an adversary proceeding.
 

 We must accordingly reverse the award of damages and counsel fees from Riecke-hoff to de Jesus.
 

 Reversed.
 

 [1]
 

 . While Rieckehoffs attorney testified without contradiction that he first learned of the bankruptcy case after the abortive April 1 sale, the bankruptcy court’s findings as to when Riecke-hoff first learned of de Jesus’s petition are unclear. The bankruptcy court speaks of Riec-kehoff applying for relief from the stay on April 7, 1981 “[h]aving
 
 now
 
 acquired knowledge of de Jesus’s Chapter 13 case” (emphasis supplied). But it also lists a series of acts, including the April 1 auction, as occurring “[d] espite the automatic stay and his [Rieckehoffs] knowledge of it.” When Rieckehoff challenged the latter finding as incorrect and unsupported,
 
 *850
 
 the court responded that the issue was unimportant.
 

 [2]
 

 . A motion to reconsider the dismissal of a bankruptcy case is apparently governed by Bankr.R. 923. See Bankr.R. 923 advisory committee’s note. This rule states simply that “Rule 59 of the Federal Rules of Civil Procedure applies in bankruptcy cases.” Rule 59(e) provides, “A motion to alter or amend the judgment shall be
 
 served
 
 not later than 10 days after entry of judgment.” (Emphasis supplied.)
 

 [3]
 

 . Although the record suggests that de Jesus argued at the June 16, 1981 hearing that she in fact served Rieckehoff, she does not press that claim here, relying instead on the assertion that no service was necessary under the circumstances of her case.
 

 [4]
 

 . Bankruptcy Rule 762 simply states that “Rule 62 of the Federal Rules of Civil Procedure applies in adversary proceedings.” Federal Rule 62(a) provides that “no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry.”
 

 [5]
 

 . Under the 1978 Act, bankruptcy courts were intended to have the power to adjudicate civil contempts. See 28 U.S.C. § 1481. 2
 
 Collier on Bankruptcy
 
 ¶ 362.11 (15th ed. 1983). The instant case was decided before the Supreme Court, in
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), invalidated the sweeping extension of bankruptcy court powers contained in the 1978 Bankruptcy Act. While
 
 Marathon
 
 seems likely to have terminated the bankruptcy court’s civil contempt authority — leaving it to the district courts to handle bankruptcy contempts, as
 
 formerly
 
 — Mara
 
 thon
 
 is expressly not retroactive. 458 U.S. at 88, 102 S.Ct. at 2880.