**Sherrill R. ZEOLI**

v.

**RIHT MORTGAGE CORP.**

**Civ. No. 92–506–M.**

United States District Court,
D. New Hampshire.

Jan. 5, 1993.

Leonard G. Deming, II, Nashua, NH, for plaintiff.

Jeffrey C. Haus, Manchester, NH, for defendant.

### ORDER

McAULIFFE, District Judge.

#### I. *Introduction*

This appeal from a decision of the Bankruptcy Court questions whether a secured creditor may postpone a previously scheduled foreclosure sale after a debtor has filed for protection, without violating the automatic stay provisions of the Bankruptcy Code. 11 U.S.C. § 362(a) (1991).

The Bankruptcy Court (Goodman, J.) determined that the act of postponing a foreclosure sale is a "continuation ... of a judicial, administrative, or other action or proceeding against the debtor," and so, violates the automatic stay provisions. Bankruptcy Code, 11 U.S.C. § 362(a)(1) (1991).

Because RIHT Mortgage Corp. ("RIHT") took action to postpone the foreclosure sale of Sherrill R. Zeoli's ("Zeoli") property after she filed for protection in the Bankruptcy Court, the Court granted Zeoli's Motion to hold RIHT in Contempt for violating the automatic stay provisions. The Court imposed a sanction requiring RIHT to pay modest attorney's fees related to the contempt motion. While the Bankruptcy Judge determined that postponement of the sale itself might adversely affect marketability of the property at a later date, because he found no actual damage to either the estate or the debtor in this case, no other sanctions were imposed and no other damages were assessed.

For the reasons set forth below, the decision of the Bankruptcy Court is reversed and vacated.

#### II. *Facts*

RIHT held a mortgage on Zeoli's residence. On June 1, 1992, Zeoli filed a Petition in Bankruptcy under the provisions of Chapter 7, United States Bankruptcy Code. Prior to her filing, RIHT had scheduled a non-judicial foreclosure sale of Zeoli's property on June 3, 1992, at 11:00 a.m. Two days before the sale, counsel for RIHT was informed of Ms. Zeoli's personal bankruptcy status. Counsel presumably was aware of the automatic stay provisions of 11 U.S.C. § 362(a).

In preparation for the anticipated June 3 foreclosure sale, RIHT had already published the three notices required by applicable New Hampshire law. N.H.REV.STAT. ANN. § 479:25 (1991). Despite Zeoli's personal bankruptcy status, and without regard to the automatic stay provisions, RIHT attended the scheduled foreclosure sale on June 3, 1992. Its actions were limited, however, to reading and posting a notice of postponement of sale to a future date certain, i.e. July 22, 1992. RIHT sent a copy of the notice of postponement to all parties who had initially received notice of

the sale, again as required by applicable New Hampshire law. N.H.REV.STAT. ANN. § 479:25. On June 22, 1992, RIHT filed a Motion for Relief from Stay in the Bankruptcy Court. On August 6, 1992, the Bankruptcy Court granted relief from the automatic stay provisions with respect to Zeoli's property.

On July 8, 1992, Zeoli's counsel filed a Motion for Contempt against RIHT. Zeoli argued that RIHT's act postponing the foreclosure sale violated the stay provisions. A hearing on the motion was held on August 19, 1992, at which the Bankruptcy Court concluded that the automatic stay provisions extend even to action by a creditor to postpone a previously scheduled foreclosure sale. However, since no damage to the debtor or her estate occurred as a result of RIHT's postponement, the Bankruptcy Court limited its sanction to imposition of modest attorney's fees related to the contempt motion.

On August 16, 1992, RIHT took an appeal to this Court, which exercises jurisdiction under 28 U.S.C. § 158(a) (1992).

### III. *Discussion*

In reviewing a Bankruptcy Court's decision, a District Court will not disturb findings of fact unless they are clearly erroneous. *Briden v. Foley*, 776 F.2d 379, 381 (1st Cir.1985); Bank.R. 8013. Questions of law, on the other hand, are subject to plenary review. *Robb v. Schindler*, 142 B.R. 589, 590 (D.Mass.1992) citing *In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir.1991). The facts of this case are not in dispute, and the question presented is entirely one of law. Accordingly, this Court will redetermine the issue.

The automatic stay provisions were made part of the Code by the Bankruptcy Reform Act of 1978, to effect a temporary halt to all debt collection or enforcement proceedings until a court could reasonably assess the debtor's circumstances and make appropriate dispositive orders:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It per-

mits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

Notes of the Committee on the Judiciary, S.Rep. No. 989, 95th Cong., 2d Sess. 54, (1978), *reprinted in* [1978] U.S.Code Cong. & Ad.News 5787, 5840.

In its 1973 report, the Commission on the Bankruptcy Laws of the United States noted its frustration with the "dismember[ing] of estates by the foreclosures of liens instituted before the filing of a petition in bankruptcy." The Commission also lamented the courts' inability, at that time, to halt continuation of foreclosure proceedings initiated before commencement of a liquidation case. H.R.Rep. No. 137, 93rd Cong., 1st Sess. 16 (1973). Congress responded by enacting 11 U.S.C. § 362(a) which provides, in pertinent part, that the filing of a petition in bankruptcy operates as an automatic stay of:

> (1) *The commencement or continuation,* including the issuance or employment of process, *of a judicial, administrative, or other action or proceeding against the debtor* that was or could have been commenced before the commencement of the case under this title;
>
> \*     \*     \*     \*     \*     \*
>
> (3) *Any act to obtain possession of property of the estate* or of property from the estate *or to exercise control over property of the estate;* [and]
>
> \*     \*     \*     \*     \*     \*
>
> (6) *Any act to collect,* assess, *or recover a claim against the debtor* that arose before the commencement of the case under this title. (emphasis added)

11 U.S.C. § 362(a)(1), (3), (6) (1991).

Applying these statutory provisions, the Bankruptcy Court construed the postponement of a previously scheduled foreclosure sale to be a "continuation" of a "proceeding against the debtor" within the meaning of 11 U.S.C. § 362(a)(1) (1991).

While the Bankruptcy Court's interpretation and application of the statutory language has merit, reasonable minds do differ on the subject. This Court finds the alternative interpretation and application of the automatic stay provisions employed by

other courts to be more compelling and more consistent with the purpose of the statute. Under what appears to be the prevailing view, postponing a foreclosure sale is not violative of the automatic stay provisions.

The primary purposes of the automatic stay provisions are to effectively stop all creditor collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and her creditors, thereby affording the parties and the Court an opportunity to appropriately resolve competing economic interests in an orderly and effective way. Maintaining the status quo is a repeating theme in decisions construing the automatic stay provisions. *See, e.g., In re New American Food Concepts*, 70 B.R. 254, 258 (Bankr.N.D.Ohio 1987). ("In litigation concerning the automatic stay, the Code generally seeks to leave matters in a status quo posture ..., to provide a reasonable opportunity for a financially distressed debtor, its creditors and the Court to determine whether there are reasonable prospects for the debtor's survival." (citation omitted)). *See also I.C.C. v. Holmes Transportation, Inc.*, 931 F.2d 984, 987 (1st Cir.1991) ("[t]he automatic stay is designed to effect an immediate freeze of the status quo at the outset"); *In re Texaco Inc.*, 73 B.R. 960, 963 (Bankr.S.D.N.Y.1987) (court allowed note holders to present a formal notice of tender to the debtors "in order to allow the note holders to maintain their *status quo* during the post-Chapter 11 period so that they might not be deprived of their rights to tender their Notes at some future time") (emphasis in original).

The Court of Appeals for the Ninth Circuit has explicitly held that postponement of a foreclosure sale does not violate the automatic stay provisions of the Code. *In re Roach*, 660 F.2d 1316 (9th Cir.1981). As recognized in *Roach*, postponing the date of a foreclosure sale maintains the status quo between creditor and debtor, as of the time of bankruptcy filing. *Id.* at 1319. No other effect is apparent, and certainly none measurably prejudicial to the debtor's economic interests. The Ninth Circuit emphasized in *Roach* that the postponing creditor did not "harass, interfere, or gain any advantage." *Id.* citing *In re Decker*, 465 F.2d 294, 297 (3d Cir.1972) ("[S]tays are in the nature of temporary injunctions designed to maintain the status quo.") Accordingly, the act of postponement was found by the Court of Appeals to violate neither the plain language nor the purpose of the automatic stay provisions. *Roach*, 660 F.2d at 1319.

Other courts that have faced this and similar issues have resolved them consistently with the Ninth Circuit's analysis in *Roach*. *See, e.g., In re Tome*, 113 B.R. 626, 630 (Bankr.D.Cal.1990) (Postponement of a foreclosure sale by secured creditors one month at a time while bankruptcy case is pending is not violative of automatic stay.); *In re Barnes*, 119 B.R. 552, 556 (S.D.Ohio 1989) (Rescheduling and advertisement of a Sheriff's sale three days after the dismissal of Chapter 13 petition is not violative of Bankruptcy Rule 7062.[1]); *In re Doud*, 30 B.R. 731, 733–734 (Bankr. W.D.Wash.1983) (Creditor bank, in a Chapter 7 case, postponed a non-judicial foreclosure sale of mortgaged property, without violating § 362(a), since act of postponement "is not in and of itself adversarial." [2])

Our own Court of Appeals is apparently inclined to follow the "status quo" approach to and interpretation of the automatic stay provisions. *In re de Jesus Saez*, 721 F.2d 848 (1st Cir.1983). In *Saez*, the First Circuit Court of Appeals considered

---

1. Bankruptcy Rule 7062 applies Federal Rule of Civil Procedure 62 to bankruptcy proceedings. Rule 62, in turn, provides that "no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of ten days after its entry." Fed.R.Civ.P. 62(a). The District Court determined initially that the dismissal of the petition did not constitute a proceeding that required application of Rule 7062. Nonetheless, the court noted that even if the automatic stay of Rule 7062 did apply, defendant's action still would not be a violation of the stay. *Barnes*, 119 B.R. at 557–558.

2. *Compare In re Demp*, 23 B.R. 239, 240 (Bankr. E.D.Pa.1982) (Creditor's act of *initially scheduling* a sheriff's sale, after a Chapter 7 petition had been filed by the debtor, and after receiving specific instructions not to take further action to collect, was deemed a violation of § 362(a)(1)).

whether a creditor's rescheduling of a sheriff's sale was in violation of the Bankruptcy Code's automatic stay provisions. Reasoning that the mere act of postponement was not shown to have harassed, or revived the financial pressures that drove the debtor into bankruptcy, the Court, favorably citing the Ninth Circuit's *Roach* opinion, declined to affirm a contempt finding based upon a violation of the stay provisions. *Id.* at 853.

The postponement of a foreclosure sale is certainly an "act". But, it is not an act in "continuation" of a proceeding "against the debtor" prohibited by § 362(a)(1). Rather, it is more appropriately characterized as an act *in preservation* of a stayed proceeding. The arrow of time, immune to the Bankruptcy Code's automatic stay provisions, is the critical variable in this case. Time does not stand still for legal processes. Here, its passage, combined with RIHT's "act of not acting" to postpone the sale, would have entirely expunged the stayed foreclosure proceeding, thereby disrupting the status quo to the economic detriment of RIHT, while conferring no discernable benefit on the debtor.

Applicable New Hampshire law mandates that some action be taken if the status quo between creditor and debtor is to be effectively preserved. By operation of New Hampshire law, unless a foreclosure sale is postponed to a future date certain, the foreclosure proceeding itself unalterably changes from "pending, but stayed" to "terminated".[3] *See* N.H.REV. STAT.ANN. § 429:25[4]; *Armille v. Lovett,* 100 N.H. 203, 206, 122 A.2d 265, 268 (N.H.

1956) (postponement of foreclosure sale to a definite hour and day eliminates the requirement of a new notice and advertisement).

Absent postponement of the sale to a date certain, RIHT would have been required under State law to begin the foreclosure process anew, i.e. when relief from the automatic stay was granted on August 6, 1992. The practical consequence of not postponing would be duplication of the sale costs previously incurred by RIHT merely to return to the point at which the matter was "stayed". Duplicated foreclosure costs rarely, if ever, inure to the benefit of the debtor. If there is equity in the property those duplicative costs will ordinarily be deducted from the sale proceeds, funds which otherwise would be applied for the debtor's benefit. In the event there is no equity in the property, those duplicative costs at best unfairly reduce the recovery to which the secured creditor is legitimately entitled.

Only two realistic choices[5] were allowed RIHT in this case, and a choice was unavoidable. Either RIHT could "act" to postpone the scheduled foreclosure sale to a date certain, preserving the status quo, or, it could have "acted" by taking no action, thereby suffering termination of the stayed foreclosure sale by operation of time and State law. By postponing, RIHT preserved the existing relationship between the parties, protected its legitimate interests, and imposed no burden on the debtor.

The Bankruptcy Court's determination that the postponement of a foreclosure sale might inhibit the ability of the debtor's

3. *See, e.g., Johnson v. First Nat'l Bank of Montevideo,* 719 F.2d 270, 274 (8th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984) (Bankruptcy Code may not be invoked to toll or suspend the running of a statutory period of redemption created by state law absent fraud, mistake, accident or erroneous conduct by the foreclosing officer. 11 U.S.C. 105(a)).

4. N.H.REV.STAT.ANN. § 479:25 specifies that no sale will be valid in effectuating the foreclosure of a mortgage unless the following conditions are met:
   I. Notice of such sale shall be published once a week for 3 successive weeks in some newspaper of general circulation within the town or county in which the property is situat-

ed.... The first publication shall not be less than 20 days before the date of sale....
   II. A copy of said notice shall be served upon the mortgagor or sent by registered or certified mail to his last known address or to such person agreed upon in the mortgage at least 25 days before the sale.... Like notice shall be sent to any person having a lien of record on the mortgaged premises, provided that the lien is recorded at least 30 days before the date of sale in the registry of deeds....

5. A third, and preferable, alternative ordinarily available to RIHT might well have been frustrated by time constraints: request relief from the stay prior to postponement. In this case, RIHT announced postponement of the sale on June 3rd, the previously scheduled sale date, which was only two days after debtor's petition was

estate to sell the property in a commercially reasonable manner at a later time is not persuasive. In any event, that possibility is far outweighed by the real and practical risk of measurable damage that failure to postpone would inflict upon either or both the debtor and creditor.

### IV.  Conclusion

Because the postponement of a previously scheduled foreclosure sale merely preserves the status quo between creditor and debtor, does not inure to the detriment of the debtor in any measurable way, does not itself constitute harassment or other prejudice to the debtor, and, indeed, is consistent with the plain language and purpose of the stay provisions, RIHT's action in this case was appropriate and not in violation of 11 U.S.C. § 362(a).

For the reasons set forth, the finding of contempt, and imposition of sanctions against RIHT are hereby reversed and vacated.

SO ORDERED.

filed.  RIHT's Motion for Relief from the Auto- matic Stay was not filed until June 22.