Mary E. WITKOWSKI, Debtor.

Mary E. Witkowski, Appellant,

v.

Kevin Knight, Appellee.

**BAP No. RI 14–034.**
**Bankruptcy No. 14–10149–DF.**

United States Bankruptcy Appellate Panel for the First Circuit.

Nov. 13, 2014.

Mary E. Witkowski, Coventry, RI, pro se, on brief for Appellant.

Jules J. D'Alessandro, Esq., Providence, RI, on brief for Appellee.

Before TESTER, GODOY, and HARWOOD, United States Bankruptcy Appellate Panel Judges.

TESTER, Bankruptcy Appellate Panel Judge.

Mary E. Witkowski (the "Debtor") appeals from the bankruptcy court's April 16, 2014 order denying her motion for the imposition of sanctions against Kevin Knight ("Knight") for his alleged violation of the automatic stay. For the reasons discussed below, we **AFFIRM** the order.

### *BACKGROUND*

In 2011, the Debtor and her husband, Dennis Witkowski ("Mr. Witkowski") (collectively the "Witkowskis"), executed a promissory note in the amount of $212,000.00 in favor of Knight. In order to secure the note, the Witkowskis granted a mortgage to Knight on their Coventry, Rhode Island residence (the "Property"). The note provided for monthly payments of interest until June 2012, when the entire remaining balance became due.

The Witkowskis failed to make any payments on the note, to maintain insurance on the Property, and to pay real estate taxes for the 2011, 2012, and 2013 tax years. Accordingly, on March 27, 2013, Knight demanded payment of the note. When the Witkowskis failed to pay the sum due notwithstanding demand, Knight commenced a foreclosure. A foreclosure

sale was scheduled for July 29, 2013. On July 24, 2013, Mr. Witkowski, co-owner of the Property, filed his first of two chapter 13 bankruptcy petitions (Case No. 13–11932) and Knight therefore cancelled the foreclosure. The bankruptcy court dismissed Mr. Witkowki's bankruptcy petition the following month, due to his failure to comply with a court order and to file his missing documents. Thereafter, Knight commenced a second foreclosure proceeding, with a scheduled foreclosure sale date of November 4, 2013. However, on November 1, 2013, the Debtor filed her first chapter 13 petition (Case No. 13–12897), and Knight continued the foreclosure noticed for November 4, 2013, to November 26, 2013. The bankruptcy court dismissed the Debtor's case on November 20, 2013, for her failure to comply with a court order to file her missing documents. Mr. Witkowski then filed his second chapter 13 case (Case No. 13–13083) on November 25, 2013, and Knight continued the November 26, 2013 foreclosure to December 17, 2013. On December 11, 2013, Mr. Witkowski's second case was dismissed, like the first, for failure to file missing documents.

In response to the Witkowskis' request to remain in the Property through the holidays, Knight continued the December 17, 2013 foreclosure first to January 7, 2014, and then to January 28, 2014. The Debtor filed the instant bankruptcy case (her second, and the fourth in the series of cases filed by either the Debtor or Mr. Witkowski) on January 28, 2014. Knight then continued the January 28, 2014 foreclosure to February 18, 2014. On February 18, 2014, because the Debtor's bankruptcy case was still pending, Knight continued the foreclosure to March 18, 2014. The record reflects that during the pendency of the instant bankruptcy case, Knight advertised the March 18, 2014 sale for four consecutive weeks, on February 24, 2014, March 3, 2014, March 10, 2014, and March 17, 2014, in the classified section of the Kent County (RI) Daily Times.

The Debtor did not file a motion for continuation of the automatic stay. However, on March 7, 2014, she filed a Motion for Violation of Automatic Stay and Creditor Misconduct (the "Sanctions Motion") against Knight, asserting that he violated the automatic stay by "continuing to foreclose" the Property, notwithstanding his knowledge of the pendency of her chapter 13 case. Arguing that Knight's "actions to collect the debt" caused her injury, such as loss of time from her personal and professional life, she asked the court for an award of damages, including costs and attorneys' fees. The Debtor also sought to enjoin the March 18, 2014 foreclosure by filing a state court complaint against Knight, together with an application for a temporary restraining order. On March 18, 2014, the state court granted the Debtor's application.[1] Knight therefore postponed the foreclosure to April 1, 2014, and continued to advertise the foreclosure sale through that date, when he finally cancelled the foreclosure and ceased all advertising.

On March 21, 2014, Knight filed an objection to the Sanctions Motion, disputing that he violated the automatic stay and challenging the Debtor's request for the imposition of sanctions. He argued that because the Debtor filed a second chapter 13 bankruptcy petition within one year of the dismissal of her first petition, pursuant to § 362(c)(3)(A)[2] the stay terminated in

---

**1.** In his Brief, Knight explains that the Debtor's application for a permanent injunction was later denied and that the state court action remains pending.

**2.** Unless otherwise indicated, the terms

its entirety thirty days from the petition date—i.e., on February 27, 2014. In support of this position, he cited *St. Anne's Credit Union v. Ackell*, 490 B.R. 141 (D.Mass.2013), and *Reswick v. Reswick (In re Reswick)*, 446 B.R. 362 (9th Cir. BAP 2011). Additionally, relying on *First Nat'l Bank of Anchorage v. Roach (In re Roach)*, 660 F.2d 1316 (9th Cir.1981), and *Hart v. GMAC Mortg. Corp. (In re Hart)*, 246 B.R. 709 (Bankr.D.Mass.2000), Knight argued that the continuation of the foreclosure sale from February 18, 2014, to March 18, 2014, did not violate the automatic stay but, rather, merely "maintained the status quo between the Debtor and her creditors."

During the course of the April 16, 2014 hearing on the Sanctions Motion, Knight's counsel acknowledged that Knight advertised the foreclosure during the pendency of the Debtor's two bankruptcy cases and did not terminate the advertising until April 1, 2014, when he cancelled the foreclosure. When the bankruptcy court asked Knight's attorney if he had advertised while the stay was in effect, he answered in the affirmative, but maintained that the mere continuation and advertising of the foreclosure did not violate the stay but, rather, preserved the status quo of the Property. When the court asked why he did not seek an emergency determination that "the stay [wa]s no longer in effect the thirtieth day after the filing," he replied that he did not think such a determination was necessary.

The bankruptcy court responded to this argument by admonishing: "You can't just continue and continue to harass" a debtor. Knight's counsel denied that there was any harassment, arguing:

"Bankruptcy Code," "section" and "§ " refer to Title 11 of the United States Code, 11

We've never entered onto the property. We merely advertised the property.

[W]e didn't contact them. [ ] All we did was simply advertise a continued foreclosure sale without any harassment whatsoever. And that was the cheapest alternative. Again, each one of these continuances, each time we cancel, all of those costs just end up going to the debtor's estate.

So in the ... event that there is any equity ..., they are going to lose it based on these costs.

Persuaded by Knight's arguments, the bankruptcy court entered an order denying the Sanctions Motion (the "Sanctions Order") from the bench, relying largely on *Jumpp v. Chase Home Fin., LLC (In re Jumpp)*, 356 B.R. 789 (1st Cir. BAP 2006), and *Lugo v. de Jesus Saez (In re de Jesus Saez)*, 721 F.2d 848 (1st Cir.1983). In declining to award sanctions to the Debtor, the court also took into consideration the state law of Rhode Island governing the continuation of foreclosures, and found that Knight had not harassed the Debtor. The court reasoned:

[T]here is a good-faith basis for doing a continuation rather than a cancellation when you have a multiple debtor....

[I]t just saves money. It saves the expense, and—from a creditor's standpoint, particularly in Rhode Island, you have to go through a new mediation process.

You have to go through a new default. It's about a hundred and twenty days to foreclose. So I can understand a creditor, and I don't think it's harassment to continue advertising a postponement of the foreclosure sale rather than a cancellation with a multiple debtor as this debtor....

U.S.C. §§ 101, *et seq.*

Creditor obviously hasn't taken—hasn't followed through with the foreclosure and has cancelled the foreclosure sale.... So I'm going to deny the motion of the [D]ebtor. I just don't find enough facts here to show that it was anything more than to preserve the status quo and justified on the fact that we've had multiple filings all dismissed affecting this property.

The Debtor timely appealed the Sanctions Order. On appeal, the parties reiterate the arguments that they presented in the proceedings below.

## JURISDICTION

■ A bankruptcy appellate panel is " 'duty-bound' " to determine its jurisdiction before proceeding to the merits, even if not raised by the litigants. *Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724, 725–26 (1st Cir. BAP 1998) (quoting *Fleet Data Processing Corp v. Branch (In re Bank of New Eng. Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998)). A bankruptcy appellate panel may hear appeals from "final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). "Generally, a bankruptcy court order determining whether there was a violation of the automatic stay is a final order." *In re DeSouza*, 493 B.R. 669, 671 (1st Cir. BAP 2013) (citations omitted). Accordingly, we have jurisdiction.

## STANDARD OF REVIEW

[2, 3] A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *Lessard v. Wilton–Lyndeborough Coop. Sch. Dist.*, 592 F.3d 267, 269 (1st Cir.2010). "Generally, a bankruptcy court's determination as to whether the automatic stay provisions of § 362 have been violated involves a question of law that is subject to

*de novo* review." *In re DeSouza*, 493 B.R. at 672 (citation omitted).

## DISCUSSION

The question presented on appeal is two-fold: (1) whether § 362(c)(3)(A) terminated the automatic stay with regard to the Debtor, property of the Debtor, and property of the estate, or only with regard to the Debtor and her property, thirty days after the filing of her second chapter 13 petition; and (2) to the extent the stay remains in place, whether Knight's conduct in connection with the foreclosure violated the stay. Our examination necessarily begins with a determination regarding the scope of the stay under § 362(c)(3)(A).

## I. The Automatic Stay and Its Termination Under § 362(c)(3)(A)

■ Section 362 provides, in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

...

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

...

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a). "The primary purposes of the automatic stay provisions are to effectively stop all creditor collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and her creditors, thereby affording the parties and the [c]ourt an opportunity to appropriately resolve competing economic interests in an orderly and effective way." *Zeoli v. RIHT Mortg. Corp.,* 148 B.R. 698, 700 (D.N.H. 1993). "Maintaining the status quo is a repeating theme in decisions construing the automatic stay provisions." *Id.* (citations omitted).

"Congress has taken measures to curb potential abuse" of the automatic stay by debtors. *St. Anne's,* 490 B.R. at 143. One such measure is § 362(c)(3)(A), which "limits the applicability of the automatic stay as to debtors who file a second petition after their first petition had been dismissed within the previous year." *Id.* Section 362(c)(3)(A) provides, in relevant part:

(3) [I]f a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1–year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—

(A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease **shall terminate with respect to the debtor** on the 30th day after the filing of the later case;

(B) on the motion of a party in interest for continuation of the automatic

stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30–day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed[.]

11 U.S.C. § 362(c)(3)(A)-(B) (emphasis added).

■ There is no dispute that § 362(c)(3)(A) applies to the Debtor; she filed a second case within a year of the dismissal of her first case. Courts are divided, however, regarding the extent to which the automatic stay terminates after thirty days under this statute (unless specifically extended by court order under § 362(c)(3)(B)). "The divergent authority has been attributed to a statute described as, 'at best, particularly difficult to parse and, at worst, virtually incoherent.'" *St. Anne's,* 490 B.R. at 144 n. 1 (quoting *In re Charles,* 332 B.R. 538, 541 (Bankr.S.D.Tex. 2005)).

Although the First Circuit has not addressed the issue, the Panel has previously ruled in *In re Jumpp, supra,* that § 362(c)(3)(A) and its use of the phrase, "with respect to the debtor," calls for a termination of the stay only with respect to the debtor and property of the debtor. *In re Jumpp,* 356 B.R. at 796; *accord U.S. Bank Nat'l Ass'n v. Mortimore (In re Mortimore),* No. 11–955(RMB), 2011 WL 6717680, at *4–5 (D.N.J. Dec. 21, 2011); *In re Pope,* 351 B.R. 14, 16 (Bankr.D.R.I. 2006); *In re Murray,* 350 B.R. 408, 414 (Bankr.S.D.Ohio 2006); *In re Brandon,* 349 B.R. 130, 132 (Bankr.M.D.N.C.2006); *Bankers Trust Co. v. Gillcrese (In re Gillcrese),* 346 B.R. 373, 376–77 (Bankr. W.D.Pa.2006); *In re Williams,* 346 B.R.

361, 370 (Bankr.E.D.Pa.2006); *In re Harris*, 342 B.R. 274, 280 (Bankr.N.D.Ohio 2006); *In re Jones*, 339 B.R. 360, 365 (Bankr.E.D.N.C.2006); *In re Moon*, 339 B.R. 668, 673 (Bankr.N.D.Ohio 2006); *In re Johnson*, 335 B.R. 805, 807 (Bankr. W.D.Tenn.2006). The Panel explicitly stated that "[w]ith regard to the Debtor's residence, the automatic stay remains in effect to the extent that the residence is property of the bankruptcy estate." *In re Jumpp*, 356 B.R. at 797. The *Jumpp* Panel reasoned that the plain language of § 362(c)(3)(A) was "unambiguous" and observed that "Congress could have removed the Stay in its entirety, as it did under § 362(c)(4), by simply deleting the phrase 'with respect to the debtor.'" *Id.* at 795–96 (internal quotations and citations omitted). Rejecting the view expressed in *In re Jupiter*, 344 B.R. 754, 762 (Bankr.D.S.C. 2006), "that a partial termination of the stay would fail to discourage abusive filings," the Panel concluded that a partial termination indeed penalizes the debtor and provides potential options to creditors. *In re Jumpp*, 356 B.R. at 796. These options include the enforcement of judgments against the debtor and the commencement of collection actions against the debtor. *Id.* (citation omitted).

*Jumpp* remains the "current majority view." *St. Anne's*, 490 B.R. at 143 (citation omitted).[3] Finding no reason to deviate from the majority of courts or our own precedent, we adhere to the position which we articulated in *Jumpp*, and therefore continue to hold that under § 362(c)(3)(A), the automatic stay terminates as to the

debtor and the debtor's property, but remains in effect as to the property of the estate. Applying the *Jumpp* rule to the facts of this case, it follows that on February 27, 2014, the automatic stay expired as to the Debtor and her property, and continued in effect as to the Property, which was undisputedly part of the bankruptcy estate. Having so concluded, we must determine next whether the acts of postponing a foreclosure sale, and advertising in connection with such postponements, constitute stay violations.

## II.  Whether Foreclosure Postponements Violate the Automatic Stay

Section 362(k) is "a tool to enforce the automatic stay and provide individual debtors with a recourse from violations." *In re Panek*, 402 B.R. 71, 76 (Bankr.D.Mass.2009). It provides, in pertinent part:

> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1). "A debtor alleging a violation of the automatic stay has the burden to demonstrate, by a preponderance of the evidence, that a violation of the automatic stay has occurred, that the violation was willfully committed by the respondent, and that the debtor suffered damage as a result of the violation." *In re Panek*, 402 B.R. at 76 (citation omitted). Our focus here is on whether the Debtor has

---

**3.** *But see St. Anne's*, 490 B.R. at 144, and *In re Reswick*, 446 B.R. at 373 (representing the minority view that § 362(c)(3)(A) terminates the automatic stay thirty days after filing the second petition not just as to actions taken against the debtor and his property, but also as to actions against property of the bankruptcy estate). These courts reason that "the

qualification 'with respect to the debtor' is intended to draw a distinction not among classes of property to be protected by the stay but rather between the offending serial-filing debtor and other potential parties in interest, including an innocent jointly filing spouse." *St. Anne's*, 490 B.R. at 145.

satisfied the first element by showing that a violation of the stay has occurred.

■ The "overwhelming weight of authority" holds that continuing a foreclosure sale date in the manner provided by state law during the pendency of the automatic stay does not violate the automatic stay. *Henson v. Bank of Am., N.A. (In re Henson)*, 477 B.R. 786, 789 (Bankr.D.Colo. 2012).[4] Indeed, the three circuit courts of appeal which have examined the issue have found no stay violation under these circumstances. *See Worthy v. World Wide Fin. Servs., Inc.*, 192 Fed.Appx. 369 (6th Cir. 2006); *Taylor v. Slick*, 178 F.3d 698 (3d Cir.1999); *In re Roach, supra.*

For example, in *Roach,* an early case on this issue, the debtor contended that the secured creditor violated the automatic stay by publishing several successive notices of postponement of sale. *Roach,* 660 F.2d at 1317. "Each notice had (1) indicated that the sale would not take place on a previously announced date, and (2) specified a date when the sale would take place." *Id.* The Ninth Circuit ruled that "[p]ostponement notices which specify a new sale date do not violate" § 362. *Id.* at 1318. The court explained:

The purpose of the automatic stay is to give the debtor a breathing spell from his creditors, to stop all collection efforts, harassment and foreclosure actions.... The automatic stay also prevents piecemeal diminution of the debtor's estate.... The automatic stay does not necessarily prevent all activity outside the bankruptcy forum....

Here, the Bank merely maintained the status quo, and did not harass, interfere or gain any advantage. This is consistent with the purpose of the automatic stay provision.

*Id.* at 1318–19 (citations omitted).

The Third Circuit ruled similarly in *Taylor v. Slick, supra.* There, the court rejected the debtor's assertion that continuance of a foreclosure sale of mortgaged property after he filed his chapter 11 petition violated the automatic stay, reasoning:

According to the principle of *noscitur a sociis,* the word "continuation," as used in § 362(a)(1), must be read in conjunction with other words that surround it, such as "commencement." Upon such examination, it becomes apparent that the filing of a bankruptcy petition prohibits the beginning ("commencement") of a judicial proceeding and the carrying

---

4. *Accord Roche v. Franklin First Fed. Sav. Bank (In re Roche),* 228 B.R. 102, 103–04 (Bankr.M.D.Pa.1998) (noting that "every court that has studied this specific issue (and not been reversed) has found" that the postponement of a sale in accordance with state law procedure during the pendency of the automatic stay is not a violation of the automatic stay) (citing *Mason–McDuffie Mortg. Corp. v. Peters (In re Peters),* 101 F.3d 618 (9th Cir.1996); *In re Roach, supra; Wash. Mut. v. Fritz (In re Fritz),* 225 B.R. 218 (E.D.Wash. 1997); *In re Barnes,* 119 B.R. 552, 556 (S.D.Ohio 1989); *Taylor v. Slick (In re Taylor),* 207 B.R. 995, 999 (Bankr.W.D.Pa.1997), *aff'd,* 178 F.3d 698 (3d Cir.1999); *In re Stober,* 193 B.R. 5 (Bankr.D.Ariz.1996); *Zeoli v. RIHT Mortg. Corp., supra; Tome v. Baer (In re Tome),* 113 B.R. 626, 630 (Bankr.C.D.Cal. 1990); *United Mut. Sav. Bank v. Doud (In re Doud),* 30 B.R. 731, 733 (Bankr.W.D.Wash. 1983); *Workingmen's Sav. and Loan Ass'n of Dellwood Corp. v. Kestner,* 438 Pa.Super. 186, 652 A.2d 327 (1994)); *but see Lynn–Weaver v. ABN–AMRO Mortg. Grp., Inc. (In re Lynn–Weaver),* 385 B.R. 7 (Bankr.D.Mass.2008) (holding that five foreclosure continuances, in the absence of stay relief, were each violations of the automatic stay); *In re Heron Pond, LLC,* 258 B.R. 529, 530 (Bankr.D.Mass.2001) (stating that the "right to continue [a foreclosure sale] must be subject to reasonable limitations" and holding that "a single continuance of a foreclosure sale following the filing of a petition is not a violation of the automatic stay if, before the continued sale date, the creditor filed an appropriate motion for relief from stay").

forward ("continuation") of a proceeding that has already begun.

The "continuation" of a sheriff's sale, on the other hand, connotes the postponement of a proceeding, and effectuates the purposes of § 362(a)(1) by preserving the status quo until the bankruptcy process is completed or until the creditor obtains relief from the automatic stay.

*Taylor*, 178 F.3d at 702 (citations omitted). The Sixth Circuit ruled consistently with *Taylor v. Slick* in *Worthy v. World Wide Fin. Servs., Inc., supra.*

While the First Circuit has not addressed the precise factual situation presented here, it did consider an analogous case, in which the lienholder continued a sheriff's sale of property during the pendency of the debtor's chapter 13 case and proceeded to conduct the sale after the chapter 13 petition had been dismissed. *In re de Jesus Saez, supra.* Noting that "[s]imilar actions were held not to have violated the automatic stay" in *Roach*, the First Circuit held that the lienholder's conduct did not constitute grounds for an award of civil contempt damages, absent any reason to believe that creditor would have proceeded with the auction had the petition not been dismissed. 721 F.2d at 853. The court reasoned that the creditor did little more than reschedule the auction and advertise the new date, and that the debtor failed to demonstrate that "these preparatory acts either harassed [her] or revived the financial pressures that drove [her] into bankruptcy." *Id.* (internal quotations and citations omitted).

Consistent with the weight of authority, a Massachusetts bankruptcy court recognized the ability of a creditor to postpone a foreclosure sale postpetition in *In re Hart, supra.* There the court absolved from any wrongdoing a creditor who had continued a foreclosure sale scheduled for September 2, 1998, one day after the Debtor filed his chapter 13 petition, to December 2, 1998. 246 B.R. at 740. The *Hart* court reasoned:

Like the creditor in *Roach*, [the secured party] did little more than reschedule the auction and advertise the new date from the time he learned of the petition until its dismissal.... In view of the court's citation to the Ninth Circuit's decision in *In re Roach* and the significant number of decisions following it, including a decision from the District of New Hampshire, *Zeoli v. RIHT Mortgage Corp.*, 148 B.R. 698 (D.N.H.1993), this Court concludes that the First Circuit in all likelihood would follow the Ninth and Third Circuits in holding that the mere postponement of a foreclosure sale for three months preserves the status quo and does not violate the automatic stay.

*Id.* Following the First Circuit's reasoning in *de Jesus Saez, supra,* the court found that "the Debtor's testimony was insufficient to permit a finding that the mere postponement of sale revived the financial pressures on him or harassed him." *In re Hart,* 246 B.R. at 740. Noting that its decision was fact-specific, the court suggested that the right to continue a foreclosure was not unfettered, when it warned that it could "conceive of circumstances in which postponement of a foreclosure sale may violate the automatic stay." *Id.* at 740 n. 29.

The present case does not involve the initiation of a new foreclosure. *See, e.g., Chapel v. Derringer (In re Derringer),* 375 B.R. 903, 911 (10th Cir. BAP 2007) (distinguishing continuing a foreclosure sale during the pendency of a bankruptcy case, which does not violate the automatic stay, from a creditor's mailing of a foreclosure notice to the debtor and filing it in state court). The activity that occurred postpetition was limited to the continuation of the

January 28, 2014, February 18, 2014, and March 18, 2014 foreclosure dates, and the advertising incident to those continuances (including the advertising related to the April 1, 2014 sale date). Knight did not take additional steps in the foreclosure process beyond these continuances and the advertising necessitated by the continuances. The record does not establish that these preparatory acts revived the financial pressures on the Debtor or harassed her.

 This Panel finds the analyses of the Third, Sixth, and Ninth Circuits persuasive in their interpretation of the term "continuation." We agree that "continuation," as used in § 362(a)(1), connotes an advancement of an action or proceeding. Continuing the foreclosure sale date from month to month in the manner prescribed by Rhode Island law,[5] without more, does not advance the foreclosure process. It merely maintains the status quo. "No other effect is apparent, and certainly none measurably prejudicial to the [D]ebtor's economic interests." *Zeoli v. RIHT Mortg. Corp.*, 148 B.R. at 700. Moreover, we do not "perceive of any disadvantage to" the Debtor by requiring her to "be aware of the current state of the law and be mindful of the continued sale date[s]." *In re Roche*, 228 B.R. at 105; nor do we perceive any prejudice to the Debtor caused by Knight's efforts to avoid the additional costs that would result from the

repeated cancellation and renewal of the foreclosure. Thus, we conclude that the continuations of the foreclosure sale date and the related advertising in this particular case did not violate § 362(a)(1).

### CONCLUSION

Based on the foregoing, we **AFFIRM** the order of the bankruptcy court.

---

5. Although neither the parties nor the court identified the particular Rhode Island statute which governs the continuation of foreclosures, we note that R.I. Gen. Laws § 34–27–4(a) provides, in part:

[I]f the sale is adjourned as provided in Rhode Island general laws § 34–11–22, and the adjourned sale is held during the same calendar week as the originally scheduled day of sale, no additional advertising is required. Otherwise, publication of the notice of the adjourned sale, together with a notice of the adjournment or adjournments,

shall be continued at least once each week commencing with the calendar week following the originally scheduled day of sale; the sale, as so adjourned, shall take place during the same calendar week in which the last notice of the adjourned sale is published, at least one day after the date on which the last notice is published.

R.I. Gen. Laws § 34–27–4(a). Moreover, the Debtor here has not asserted that Knight's foreclosure continuances failed to comply with the provisions of Rhode Island law.