

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-13-1995

# Constitution Bank v Tubbs

Precedential or Non-Precedential:

Docket 93-1295

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Constitution Bank v Tubbs" (1995). *1995 Decisions.* Paper 266.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/266

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 93-1295, 94-1411, 94-1489


CONSTITUTION BANK

v.

STEVEN R. TUBBS, ELLIOTT A. WEINBERG
AND WEINBERG TUBBS & CO.,

Appellants in No. 93-1295,

Steven R. Tubbs,
Appellant in 94-1489

Elliott A. Weinberg,
Appellant in No. 94-1411


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action 91-06988)


Argued on December 5, 1994

Before: STAPLETON, ROTH and LEWIS, Circuit Judges

(Opinion Filed October 13, 1995)

John M. Elliott, Esq.
Mark A. Kearney, Esq. (Argued)
Peter A. Lennon, Esq.
Mark J. Conway, Esq.
Elliott, Reihner, Siedzikowski, North & Egan, P.C.
Union Meeting Corporate Center V
P.O. Box 3010
925 Harvest Drive
Blue Bell, PA 19422

1

Walter R. Milbourne
Saul, Ewing, Remick & Saul
3800 Centre Square West
Philadelphia, PA  19102
        Attorneys for Appellee

Fred W. Mattlin, Esq.
Gregg W. McClosky, Esq. (Argued)
Mattlin & McClosky
2300 Glades Road
Suite 400 East
Boca Raton, FL 33431
          Attorneys for Appellants, Weinberg,
          Weinberg, Tubbs & Co. and Tubbs

Richard H. Martin, Esq. (Argued)
Astor, Weiss, Kaplan & Rosenblum
The Bellevue, Sixth Floor
Broad Street at Walnut
Philadelphia, PA 19102
        Attorney for Appellant Weinberg

OPINION OF THE COURT

ROTH, Circuit Judge:

## I.   **INTRODUCTION**

These consolidated appeals present a confusing mosaic of bankruptcy petitions, motions for relief from the automatic stay, and nunc pro tunc rulings.  We must piece together what effect the rulings on relief have had as judgments were entered, as retroactive relief was granted, and as appeals were filed. The appeals all arise from an action for fraud and fraudulent conveyance brought by Constitution Bank ("ConBank") against defendants, Elliott A. Weinberg ("Weinberg"), Steven R. Tubbs

2

("Tubbs"), and Weinberg Tubbs & Co. ("WTC"). In Appeal No. 93-1295, all three defendants have appealed the district court's order of February 26, 1993, which entered judgment against WTC for compensatory damages and against Weinberg and Tubbs for punitive damages. In Appeal No. 94-1411, Weinberg has appealed the district court's order of March 24, 1994, which modified its February 26 judgment order by holding Weinberg and Tubbs to be jointly and severally liable with WTC for ConBank's compensatory damages, and in Appeal No. 94-1489, Tubbs has also appealed the district court's March 24 order.

## II.   BACKGROUND AND PROCEDURAL HISTORY

On September 2, 1987, Grossman Weinberg and Associates, P.A. ("GWA"), a professional accounting corporation, borrowed $27,450 from ConBank in order to purchase computer and office equipment. GWA executed a promissory note in favor of ConBank for $27,450. The officers and directors of GWA, professional accountants Weinberg, Tubbs, Steven B. Grossman, William A. Cadmus and Doreen A. Gentile, personally guaranteed the loan.

These guarantees provided that the accountants:
> intending to be legally bound,
> unconditionally, absolutely and irrevocably
> guarantee(s) and become(s) surety to Bank for
> the prompt payment of all sums now or
> hereafter due to Bank from Borrower . . ..

> \*       \*       \*

> The Obligation of Guarantor hereunder
> shall continue in full force and effect until
> thirty (30) days after Bank shall have
> actually received written notice of
> Guarantor's intention to terminate this
> Guaranty sent by certified or registered

> mail, return receipt requested.  <u>This Guaranty shall nevertheless continue in effect and Guarantor shall remain liable for any Obligation which was incurred by Borrower prior to such date of termination, and which is the result of any renewal, extension, or modification of any such Obligation</u> . . ..

App. A-1055-59[1] (emphasis added).  In support of their personal guarantees, each of the accountants submitted a financial statement to ConBank.

GWA then obtained a line of credit with ConBank and over the next two years borrowed an additional $250,000.  During the course of their dealing, GWA was represented to ConBank as being a single accounting firm with offices in both New Jersey and Florida.  In actuality, however, GWA's two "offices" were separate corporations having the same name and, for the most part, the same officers and directors.[2]

In July 1990, unbeknownst to ConBank, defendants Weinberg and Tubbs resigned from GWA and formed WTC, a competing

---

[1] Appendix references from Appeals No. 93-1295 and 94-1489 will be referred to as "App. A-__; appendix references from Appeal No. 94-1411 will be referred to as "App. B-__".

[2] In their brief in Appeal No. 93-1295, defendants state that: "[e]ach of the shareholders [Tubbs, Weinberg, Grossman, Cadmus and Gentile] were directors in each corporations[, and] . . . each shareholder was an officer in each corporation but held different offices."  Moreover, Weinberg testified that as of October 1989 the New Jersey and Florida GWA corporations had "maintained for the most part common officers, directors and shareholders and have operated co-existing practices involving accounting and other related services rendered by CPAs, accountants and other support staff."  App. A-190-92.  Tubbs also testified as to the overlap of shareholders between the two corporations, stating that from 1987 to July of 1990, the shareholders common to both the New Jersey and Florida GWA corporations were Grossman, Cadmus, Tubbs and Weinberg (because Gentile was not a CPA she held only an equity interest), but that Bartnick was a shareholder in the Florida GWA corporation only.  App. A-258.

4

accounting firm.  At the same time, Weinberg and Tubbs transferred roughly $1 million in assets from GWA to WTC.

Sometime between October 1990 and March 1991, GWA defaulted on its loans.  In June 1991, the Court of Common Pleas for Philadelphia County entered judgment in favor of ConBank and against defendants Weinberg and Tubbs on their personal guarantees.

On November 8, 1991, ConBank filed an action in the United States District Court for the Eastern District of Pennsylvania, seeking to recover compensatory and punitive damages caused by defendants' allegedly fraudulent conduct in guaranteeing $277,450 in loans for GWA and then conveying away assets so that ConBank would be unable to collect from GWA.[3]  In March 1992, the court held a bifurcated jury trial on the defendants' liability for fraud and fraudulent conveyance.  The jury returned a bifurcated verdict in favor of ConBank as to liability only.  On March 13, 1992, the district court entered judgment on liability against the defendants.

Shortly thereafter, on March 31, 1992, the district court dismissed ConBank's complaint with prejudice on the basis of a purported settlement agreement between the parties.  When the settlement fell through, ConBank sought to vacate the dismissal.  On August 6, 1992, the court entered an order denying ConBank's motion to vacate, without prejudice to renew, but

---

[3]  Although ConBank had also named GWA-New Jersey, GWA-Florida, Cadmus, Gentile and William A. Cadmus & Company as defendants in its complaint, those defendants were dismissed prior to trial.

permitting ConBank to show cause why the court should not give full force and effect to the judgment ConBank had obtained in the Court of Common Pleas in June 1991. After a hearing, the court, on November 30, 1992, vacated its prior dismissal order and directed that the case be reassigned to another judge for trial on the issue of damages.

On January 27, 1993, a new judge empaneled two juries to hear the case -- one to decide damages only and the other to decide both liability and damages in the event that the first judgment of liability obtained on March 12, 1992, would be reversed. On February 3, both juries returned verdicts in favor of ConBank and against the defendants. The court then molded the verdict of the second jury (the one that decided both liability and damages) as follows:

> In favor of the plaintiff and against Elliott Weinberg for punitive damages in the amount of $48,000, and in favor of Elliott Weinberg and against plaintiff, as to compensatory damages; in favor of plaintiff, and against Steven Tubbs for punitive damages in the amount of $72,000, and in favor of Steven Tubbs [and] against plaintiff for compensatory damages; and in favor of plaintiff and against Weinberg Tubbs and Co., PA in the amount of $355,075, plus reasonable attorney's fees and costs [-- w]hich sum will be further molded after a hearing on February 26, 1993.

App. B-155. No judgment order was entered at that time.

On February 26, the district court held the hearing to impose counsel fees. In the meantime, on February 16, Tubbs had filed a Chapter 11 bankruptcy petition in the Southern District of Florida. Notice of his bankruptcy was filed in the district

6

court on February 19.  On February 26, approximately one and a half hours before the district court hearing, Weinberg filed a Chapter 7 bankruptcy petition in the Southern District of Florida.

At the February 26 hearing, defense counsel contended that the court did not have the ability to enter judgment without a grant of relief from the automatic stay pursuant to 11 U.S.C. §362(a).  The district court disagreed, holding that judgment had been entered on February 3, when the court first molded the jury's verdict, and that the formal entry of judgment did not violate the automatic stay.

After determining the proper award of attorney's fees and costs to be $282,962.22, the court entered judgment nunc pro tunc to February 3, 1993, when the jury's verdict was originally molded by the court.  The February 26 order awarded ConBank $48,000 in "punitive damages only" against Weinberg, $72,000 in "punitive damages only" against Tubbs, and $355,075 in compensatory damages plus $282,962.22 for attorney's fees and costs against WTC.  App. A-980-81.  Although the court signed the judgment on February 26, it was not entered until March 1.

On March 16, 1993, WTC filed a Chapter 11 bankruptcy petition in the Southern District of Florida.

On March 29, defendants Weinberg, Tubbs, and WTC filed a notice of appeal from the February 26 judgment order (Appeal No. 93-1295).  In that appeal, defendants asserted that the district court erred (1) by denying their Rule 50(a) motion for judgment as a matter of law because there was no evidence of the

7

essential elements of fraud, there was insufficient evidence to support the jury's finding of fraud, and there was insufficient evidence to support the jury's award of punitive damages against Weinberg and Tubbs; (2) by failing to acknowledge the preclusive effect of the state court judgement against Weinberg and Tubbs; and (3) by improperly charging the jury. On May 17, 1993, this Court entered an order staying Appeal No. 93-1295, pending either the termination of the bankruptcy proceedings or an order from the bankruptcy court lifting the automatic stay with regard to the appeal.

ConBank filed a motion for relief from the automatic stay in Weinberg's bankruptcy action in order to pursue a motion to clarify the district court's February 26, 1993, judgment order regarding Weinberg's liability for compensatory damages. After oral argument, the bankruptcy court on December 29, 1993, granted ConBank's motion for relief from stay.[4]

---

[4] At the same time, the bankruptcy court found that the award of punitive damages against Weinberg was non-dischargeable in bankruptcy. ConBank also urged the bankruptcy court to hold that the jury's findings that Weinberg committed fraud required the bankruptcy court to hold that the amount that Weinberg owed under his guaranty agreement (pursuant to the Pennsylvania state court judgment) was obtained by fraud and was therefore also non-dischargeable in bankruptcy. The court, however, declined to hold that any debt based upon the Pennsylvania state court breach of contract action (for breach of Weinberg's guaranty agreement to ConBank) was dischargeable in bankruptcy. It did so without prejudice, however, "pending a final decision in the United States District Court for the Eastern District of Pennsylvania . . . address[ing] the lack of any compensatory damages awarded against Defendant Weinberg." App. A-997. Noting that "the jury specifically found all the elements of fraud and specifically found conduct justifying an award of punitive damages," a finding the court deemed to be "inconsistent" with the jury's failure to award compensatory damages against Weinberg, the bankruptcy court

As a result of the grant of relief from stay, on January 27, 1994, ConBank filed a motion in the district court for clarification of the February 26 order, seeking to have that order amended to reflect that Weinberg, Tubbs, and WTC were jointly and severally liable for the compensatory damages awarded by the jury. The district court held oral argument on ConBank's motion, and on March 24, 1994, the court granted it, altering its original judgment order to impose joint and several liability on Weinberg, Tubbs, and WTC for ConBank's compensatory damages.

The district court amended its order with respect to Tubbs, even though Tubbs did not receive notice or an opportunity to be heard at the March 11 argument on ConBank's motion to clarify. Moreover, the court acted against Tubbs at the suggestion of ConBank's counsel, even though ConBank's counsel had earlier assured Tubbs that ConBank would not seek compensatory damages against him by its motion to clarify the judgment with respect to Weinberg. The district court held that the modification of the award was necessary to further the interests of justice because the jury's answers to interrogatories had established that the fraud by Weinberg and Tubbs had caused ConBank to suffer the compensatory damages.

---

granted ConBank relief from stay to seek clarification of the lack of compensatory damages against Weinberg. App. B-371. Thus, presumably if the district court determined that Weinberg was liable for compensatory damages, the bankruptcy court would find the amount owed on his guaranty agreement to be non-dischargeable.

Weinberg and Tubbs both appealed the district court's order of March 24, 1994.  On April 6, Weinberg filed Appeal No. 94-1411 and, on April 25, Tubbs filed Appeal No. 94-1489.

On April 24, 1994, ConBank went back to the Florida bankruptcy court seeking relief from the automatic stay with respect to defendant Weinberg in order to pursue the present appeals.  On April 27, the Weinberg bankruptcy court granted ConBank's motion, nunc pro tunc, to provide retroactive relief from stay to cover Weinberg's pursuit of appeals in Nos. 93-1295 and 94-1411.

On June 6, 1994, Tubbs filed a motion to consolidate all three appeals.  Defendants Weinberg and WTC made similar motions.  Also on June 6, Tubbs filed a motion in this Court to terminate the stay of Appeal No. 93-1295.  Tubbs informed us that he had a pending motion before the Florida bankruptcy court for relief from the automatic stay in order to pursue Appeal No. 93-1295.  On July 15, 1994, the bankruptcy court granted Tubbs relief from the stay, stating that Tubbs "is free to proceed in the United States Court of Appeals for the Third Circuit, in case No. 93-1295."  The bankruptcy court did not, however, grant Tubbs any relief from the stay in Appeal No. 94-1489.

On August 1, 1994, we entered an order for the appeals to proceed because "the automatic stay" had been lifted.  We also granted defendants' motions to consolidate the appeals.

For purposes of resolving the present appeals, we assume that all of defendants' bankruptcies are still pending.

10

### III. DISCUSSION
### THE AUTOMATIC STAY

Before addressing the merits of defendants' appeals, we must examine the effect of the automatic stays which arose at the filing of each defendant's bankruptcy petition, pursuant to 11 U.S.C. § 362.[5]  When interpreting and applying the legal precepts underlying the bankruptcy court's automatic stay, we apply plenary review.  Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1203 (3d Cir. 1991).  Because the granting of relief or the failure to request relief from the automatic stay, triggered by defendants' bankruptcies, present questions about our jurisdiction to consider aspects of these appeals, we note that we have "inherent power and a continuing obligation to

---

[5]  Section 362 provides in part:

> Automatic Stay.
> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of --
>> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).  Subsection (b) enumerates specific exceptions to the automatic stay rule – none of which apply here.

determine [our] own jurisdiction." Id. at 1198 (citations omitted).

The purpose of the automatic stay is twofold: (1) to protect the debtor, by stopping all collection efforts, harassment, and foreclosure actions, thereby giving the debtor a respite from creditors and a chance "to attempt a repayment or reorganization plan or simply be relieved of the financial pressures that drove him into bankruptcy;" and (2) to protect "creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors." Maritime, 959 F.2d at 1204.

The stay is "automatic" because it is triggered upon the filing of a bankruptcy petition regardless of whether the other parties to the stayed proceeding are aware that a petition has been filed. The automatic stay cannot be waived. Relief from the stay can be granted only by the bankruptcy court having jurisdiction over a debtor's case. Id. A party in interest may obtain relief from stay, pursuant to § 362(d)(1), by requesting the relief from the bankruptcy court and, after notice and a hearing, showing cause. 11 U.S.C. § 362(d)(1).

The automatic stay is of broad scope, directing that "[a]ll judicial actions against a debtor seeking recovery on a claim that were or could have been brought before commencement of a bankruptcy case, are automatically stayed." Maritime, 959 F.2d at 1203, 1206. Thus, "[o]nce triggered by a debtor's bankruptcy petition, the automatic stay suspends any non-bankruptcy court's authority to continue judicial proceedings then pending against

the debtor." <u>Id.</u> at 1206. Unless relief from the stay is granted, the stay continues until the bankruptcy case is dismissed or closed, or discharge is granted or denied. 11 U.S.C. § 362(c). Once a stay is in effect, without relief from the bankruptcy court, "the parties themselves [can]not validly undertake any judicial action material to the . . . claim against" the debtor. <u>Id.</u> at 1207. This includes the filing of motions, which are void <u>ab initio</u>, unless the bankruptcy court later grants retroactive relief.[6] <u>Id.</u> at 1207, n.13.

There is no question that the present appeals arise from an action originally brought by ConBank <u>against</u> the three debtor defendants. This is the type of action that triggered the automatic stay provision of section 362 when each defendant filed a petition for bankruptcy. At that time the automatic stay arose and suspended the competence of the district court and of the parties to continue with the proceedings against that defendant. As a consequence, we must consider whether the appeals have been affected by the automatic stays, thereby depriving us of the authority to proceed. We address the appeals in turn.

**A. STEVEN TUBBS**

**1. Appeal No. 93–1295**

---

[6] Generally, judicial actions and proceedings against the debtor are void <u>ab initio</u> absent relief from the stay. <u>Id.</u> We have, however, recognized that section 362(d), which requires the bankruptcy court to grant relief from the stay under certain circumstances and permits such relief to be applied retroactively, would allow the bankruptcy court to grant annulment of a stay, thereby making acts in violation of the stay voidable, rather than void <u>ab initio</u>. <u>See</u> <u>In re Siciliano</u>, 13 F.3d 748, 750–51 (3d Cir. 1994).

On February 16, 1993, defendant Tubbs triggered the automatic stay by filing a petition for bankruptcy. Because the automatic stay was effective as soon as the petition was filed, the district court was without authority to act against Tubbs at the February 26 hearing or to issue its judgment order against him. However, despite Tubbs' contention that no action could be taken against him because of the automatic stay, the court entered judgment against Tubbs on punitive damages and in favor of Tubbs on compensatory damages nunc pro tunc to February 3, 1993, the date of the jury verdict. The February 26 judgment was docketed on March 1, 1993.[7] Tubbs and his co-defendants filed Appeal No. 93-1295 on March 29, 1993. Because the stay of proceedings against Tubbs was effective automatically when his bankruptcy petition was filed, the district court was without authority to act against Tubbs at the February 26 hearing or to effectively enter a judgment order against him.

The district court's issuing of its February 26 judgment order nunc pro tunc to February 3, a date prior to the triggering of the automatic stay, was, therefore, of no effect. Several courts have applied the void ab initio rule to nullify judgments entered after a stay has been triggered, even when the only action left for the court was to enter the judgment. See, e.g., In re Capitol-York Constr. Corp., 43 B.R. 52 (Bankr. S.D.N.Y. 1984); Great Southwest Fire Ins. Co. v. Triple "I" Ins.

_____

[7] Under Federal Rule of Civil Procedure 58, a judgment is not effective until it is set forth on a separate document and entered in accordance with Rule 79(a), which requires docketing of the judgment.

14

_Servs._, 727 P.2d 336 (Ariz. 1986) (_en banc_); _Chapliski v. Churchill Coal Corp._, 503 A.2d 1 (Pa. Super. 1985).

Although not controlling, the _Chapliski_ case is on point. In _Chapliski_, plaintiff and defendant entered into a stipulation on June 18, 1981, requiring defendant to pay plaintiff a specified sum of money. On June 29, defendant filed a petition for bankruptcy, thereby triggering the automatic stay. Defendant failed to notify either plaintiff or the court of his bankruptcy petition. On July, 7, the court entered a judgment order, incorporating the stipulation, against defendant. In that order, the court specified that the judgment was entered _nunc pro tunc_ to June 29, before defendant's petition for bankruptcy had been filed. On those facts, the Pennsylvania Superior Court found that the plain meaning of § 362(a) compelled it to hold that the automatic stay barred the lower court on July 7 from entering the retroactive order. _Id._ at 2.

The present case is similar to _Chapliski_. We agree with the Pennsylvania court's reasoning. As we recognized in _Maritime_, 959 F.2d at 1206, once in effect, the automatic stay "suspends any non-bankruptcy court's authority to continue judicial proceedings" against the debtor. The district court's entry of judgment against Tubbs amounts to a continuation of judicial proceedings against him. Since the very act of entering the February 26 order was in violation of the stay, the fact that the order itself specified that it was to be effective _nunc pro tunc_ could not save it. Thus, we conclude that the district

court could not enter an order against Tubbs after the stay had taken effect and the judgment was void <u>ab initio</u>.

On July 15, 1994, the bankruptcy court granted Tubbs' motion for relief from the stay in order to pursue Appeal No. 93-1295. However, the bankruptcy court has never granted relief from the stay in the district court, either prospective or retroactive, so that the February 26 judgment could be entered against Tubbs. For this reason, there is nothing from which to appeal because no valid judgment order has yet been entered against Tubbs in the district court.

### 2.   Appeal No. 94-1489

Tubbs filed Appeal No. 94-1489 for review of the district court's clarification order of March 24, 1994. However, as with the February 26 order, no relief from the stay has been granted in the district court to permit entry of the March 24 judgment against Tubbs. Moreover, although the Florida bankruptcy court granted Tubbs relief from the stay to pursue Appeal No. 93-1295, no mention is made in the relief order of Appeal No. 94-1489. Tubbs' appeal in No. 94-1489 is void <u>ab initio</u>.

## B.  ELLIOTT WEINBERG

### 1.  Appeal No. 93-1295

On February 26, 1993, Weinberg filed a petition for bankruptcy, thereby triggering the automatic stay.  One hour and a half later, the district court began its hearing to mold the jury's verdict.  For the reasons discussed above with respect to Tubbs, the district court's entry of its February 26 judgment as nunc pro tunc to February 3 does not alter our conclusion that the act of entering the judgment was in violation of the automatic stay against Weinberg.

The bankruptcy court's first grant of relief from the stay in the Weinberg bankruptcy occurred on December 29, 1993, when the court granted relief so that ConBank could clarify the district court's February 26, 1993, judgment order.  This grant of relief to consider the February 26 order lifted the stay as to that order insofar as it applied to Weinberg.  In the March 24, 1994, clarifying order, the district court entered both the February 26 order and its clarification for the first time against Weinberg.

In its second grant of relief from stay on April 27, 1994, the bankruptcy court granted relief, nunc pro tunc, "to allow . . . Weinberg to prosecute the appeal that has been filed before the Third Circuit . . . of the trial court's underlying . . . February 26, 1993" judgment.  Accordingly, Weinberg's Appeal No. 93-1295 would be properly before this Court for review of the February 26 judgment order, except for one problem.  In view of the fact that the Febru____26 order could not be entered against

17

Tubbs, it is not a final order and is not appealable.  See
Maritime, 959 F.2d at 1208.  Nor has there been a Fed. R. Civ. P.
Rule 54(b) certification in this case to permit us to hear
Weinberg's appeal.

For these reasons, not only do we not have Tubbs'
appeal before us, but we cannot consider the issues raised by
Weinberg on the merits of the February 26 order.  We do not have
appellate jurisdiction because there is no final order.  This is
true, as we noted in Maritime, even though this jurisdictional
problem was not briefed by the parties.  Id.

### 2.  Appeal No. 94-1411

The Florida bankruptcy court's order of April 24, 1994,
also granted retroactive relief from the stay to permit the
filing of the Appeal No. 94-1411, seeking review of the March 24,
1994, order.  However, as with Appeal No. 93-1295, we do not have
jurisdiction because the March 24 order is void ab initio as to
Tubbs and is for that reason not a final order and not
appealable.

### C.  WTC

On March 16, 1993, WTC triggered the automatic stay
provision of § 362(a) by filing its petition for bankruptcy.
Because WTC's bankruptcy action is still pending, the stay
remains in effect unless the bankruptcy court has granted relief
from it.  No party has submitted any evidence that the bankruptcy
court has granted such relief in order to permit WTC to pursue
its present appeal (No. 93-1295), or for any other reason.

18

Therefore, even if we did not jurisdiction to hear the Tubbs and Weinberg appeals, we could not hear WTC's.

### IV. <u>CONCLUSION</u>

The moral of this story is that one accomplishes little in obtaining relief from the automatic stay to appeal a judgment if that judgment was not a final one because of failure to lift the automatic stay in order to enter the judgment against all parties. We will, for the reasons stated above, dismiss these appeals for lack of appellate jurisdiction.