In re Harvey TAYLOR, Debtor.

Harvey TAYLOR, Plaintiff,

v.

Thomas McCune SLICK, individually and as Executor of the Estate of Dorothy M. Balentine, Deceased, Defendant.

Bankruptcy No. 95–23393 JKF.
Adversary No. 96–2584.

United States Bankruptcy Court,
W.D. Pennsylvania.

May 1, 1997.

Robert O. Lampl, and John P. Lacher, Pittsburgh, PA, for Debtor.

Terence O'Halloran, and Wayne Whitehead, Greensburg, PA, for Defendant.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court is the motion of Thomas McCune Slick to dismiss Debtor's complaint. Because we will consider matters outside the pleadings, as reflected on the state court docket and in the briefs, we will treat this motion as a motion for summary judgment. Fed.R.Civ.P. 12(b). *See also* Fed.R.Civ.P. 56. The complaint concerns approximately 20 acres of real estate located at R.D. # 1, West Newton, Sewickley Township, Westmoreland County, Pennsylvania. Slick is the executor of the estate of Dorothy M. Balentine, the mortgagee.[1] Slick obtained a default judgment in mortgage foreclosure in 1990 in the Court of Common Pleas of Westmoreland County, Pennsylvania. Writs of Execution were issued at various times and stayed by agreement of the parties. Debtor filed the instant chapter 11 on September 1, 1995, to stay a sheriff's sale scheduled for

September 5, 1995. Because the bankruptcy was filed a few days before, the sheriff's sale was continued to October 23, 1995, by oral public announcement at the time and place set for the sheriff's sale pursuant to Pa. R.Civ.P. 3129.3. Slick obtained a default order granting relief from stay on October 17, 1995, and the sheriff's sale took place on October 23, 1995.

Debtor's complaint consists of six counts. Count I seeks a declaratory judgment invalidating the sale and decreeing his ownership of the acreage. Debtor alleges that the continuation of the sheriff's sale postpetition violated the automatic stay and, therefore, the sale is void. In the general averments of the complaint, Debtor also alleges that he did not receive notice of the motion for relief from stay filed by Slick in this case. If he had, he contends, he could have shown that there was a substantial equity cushion in the property, thereby preventing entry of an order granting relief from stay.

Counts II, III, IV, and V are related. Count II seeks a judgment against Slick for conversion of wheat and straw Debtor planted on the property in 1995 that was harvested and sold by Slick in August, 1996. Count III seeks a judgment against Slick for unjust enrichment arising from the harvesting and sale of the wheat and straw by Slick. Debtor avers that he did all the work and Slick reaped the profits.

Count IV seeks an accounting concerning the wheat and straw and the amount of the claim based on the mortgage and note. With respect to the latter, Debtor specifically challenges the ten percent post-judgment interest rate charged by Slick. Count V is captioned "Objection to Claim" and states, in part,

45. The Defendant's alleged claim is based upon an erroneous interest calculation on the allegations concerning the wheat, straw, and interest rate.

46. The Defendant's alleged claim provides no credit for the wheat and straw wrongfully taken from the property.

Wherefore, it is respectfully requested that the Honorable court dismiss the De-

---

1. The complaint names Slick individually and as executor of Balentine's estate.

fendant's claim and/or make a determination as to the proper amount of said claim. Slick has not filed a proof of claim in this bankruptcy case and Debtor did not file one on Slick's behalf. Slick obtained a judgment in foreclosure and, after obtaining an order of this bankruptcy court granting relief from stay, executed on the judgment. Unless there are grounds to vacate the order granting relief from stay and set aside the sheriff's sale, Slick is the owner of the property. Because there is no proof of claim based on a deficiency, Debtor's objection to claim is not cognizable.[2]

Finally, Count VI is captioned "Equitable Recoupment". Debtor alleges that Slick, whose property is adjacent to the 20 acres at issue, allowed his livestock to enter on the 20 acres and eat or otherwise destroy Debtor's crops.

The motion to dismiss alleges that this court lacks jurisdiction over this adversary because the court granted relief from stay, after which the property was sold at sheriff's sale. The motion also asserts that all of the issues raised in the complaint have or could have been litigated in numerous state and bankruptcy actions and that Debtor is merely attempting to use this forum to relitigate issues previously decided.

Based on the record before us and the applicable law, we will grant Slick's motion to dismiss with respect to Count I and Count VI. The only issues remaining, therefore, are those based on Counts II, III, IV, and V concerning the wheat and straw. There are insufficient facts alleged of record concerning Debtor's allegations with respect to the wheat and straw to permit dismissal or summary judgment. The state court had entered a temporary injunction preventing Debtor from interfering with Slick's harvesting and sale of the standing wheat crop but it was dissolved because the wheat had been harvested before a full hearing on the merits. The record before us does not support Slick's contention that the parties' rights concerning the wheat were litigated in the state court. Furthermore, the parties' rights in this regard may depend on the terms of the mortgage and note which are not part of the record.

With this background, we proceed to the facts. Because Debtor alleges that he never received notice of the motion for relief from stay, this court will exercise jurisdiction to determine whether the bankruptcy process has been followed and Debtor's right to due process protected. At this stage of the litigation, we construe the facts in the light most favorable to Debtor as the non-moving party.

In 1981 Debtor and his wife, who is not a debtor in this case, purchased from Martha J. Balentine approximately 20 acres of real estate in Westmoreland County for $72,450. The property is not Debtor's residence. A note and mortgage were executed on December 16, 1981. The amount owed was due in full on September 18, 1982, according to Slick. *See* Brief in Support of Motion to Dismiss at 1. Debtor was required to make three equal payments of $14,875 plus interest at ten percent per annum. Thomas McCune Slick, Mrs. Balentine's executor, instituted foreclosure proceedings in 1989 because Debtor had defaulted on the mortgage.[3] Attached to Slick's motion to dismiss is the

---

**2.** Debtor's "Objection to Claim" also can be construed as an objection to the claim upon which the default judgment in mortgage foreclosure was entered. That judgment was entered in 1989 and was never appealed or otherwise challenged in the state court, according to the record before us. In fact, Debtor admits that he paid "sporadically" up to the time that Slick obtained the foreclosure judgment and ceased payments in early 1995. *See* Complaint at ¶ 8; Brief in Opposition to Motion to Dismiss at 2. *But see* Brief in Support of Motion to Dismiss at 2 (payments ceased in June of 1994). A collateral attack on the validity of the default foreclosure judgment at this juncture is not warranted and we will not consider it.

**3.** Debtor alleges that he has paid more than $70,000 over the years. Even if this is true, it does not follow that Debtor was not in default on the mortgage. Moreover, he admitted in his complaint that he paid only sporadically and last made a payment in 1994 or 1995 on a note and mortgage that matured in 1982 and had been subject to a foreclosure judgment since 1990. Complaint at ¶ 8, Brief in Opposition to Motion to Dismiss at 2 (payments ceased in 1995); Brief in Support of Motion to Dismiss at 2 (payments ceased in 1994).

relevant portion of the Westmoreland County Court of Common Pleas docket sheet.[4] Personal service of the complaint in mortgage foreclosure was attempted on or about October 31, 1989, and was unsuccessful as indicated by a docket entry of that date showing that the sheriff's return of "not found" was filed. Praecipes to reinstate the complaint were filed on July 30 and September 17 of 1990.[5] The docket reflects that an order was entered on August 31, 1990, permitting substitute service of the complaint on Debtor and his wife by certified and regular mail and by posting the premises. The order further provides that

> Should this case proceed to execution and sale, this Order for Service shall apply to the Notice pursuant to Rule 3129 which is required to be served upon the Defendants [Debtor], allowing perfection of service in the same manner as provided for herein. The Plaintiffs [Slick] have conducted a reasonable search for the Defendants but have been unable to further locate them beyond their residence in McKeesport, Pennsylvania. The manner of service provided for herein is the most reasonably likely method of achieving service in this case.

A docket entry for September 20, 1990, states that the sheriff served the notice and complaint on Debtor and his wife by certified and regular mail and posted them on the property. On October 24, 1990, default judgment was entered against Debtor and his wife as follows:

| | |
|---|---|
| unpaid principal balance: | $26,852.03 |
| interest at 10% from 6/19/84 to 9/20/89: | $14,326.38 |
| attorney's commission of 10%: | $ 2,685.20 |

The total judgment was for $43,863.61 with interest from September 21, 1989, at "10.0% per annum, and costs". Notice of entry of the judgment was sent to Debtor and his wife pursuant to Pa.R.Civ.P. 3129.2. Also on October 24, 1990, a Writ of Execution in Mortgage Foreclosure was issued and an Affidavit Under Rule of Civil Procedure 3129.1 was filed as required by the Pennsylvania Rules of Civil Procedure. On October 29 and November 2, 1990, the Writ was served by certified and regular mail on Debtor and his wife in accordance with Pa.R.Civ.P. 3129.2. It was posted on the property on November 9, 1990. The docket reflects that the Writ was stayed and reissued several times. According to Debtor's brief, this occurred as the result of agreements between the parties that Debtor would make payment. Debtor admits that he made payments sporadically into 1994 but ceased to make payments early in 1995, according to Debtor, Brief at 2, and in June, 1994, according to Slick, Brief at 2. A Westmoreland County Court of Common Pleas docket entry of February 14, 1995, notes that the Writ was stayed again in light of the filing of Debtor's first bankruptcy on February 3, 1995, a chapter 13 filed at Bankruptcy No. 95–20353. The chapter 13 was dismissed on February 22, 1995, for failure to file required documents.[6]

An order dated May 31, 1995, was entered on the docket on June 1, 1995, and authorized service of the Writ of Execution by publication. This order reconfirmed the order of August 31, 1990, authorizing substitute service.[7] The Writ of Execution was served on Debtor and his wife in July of 1995 by regular and certified mail and by posting the property. Debtor admits in his complaint

---

4. The docket sheet covers the period up to approximately February of 1995. For the period thereafter and until August 1996, Slick provided the Westmoreland County Civil System Case History Listing. Debtor also attached to his complaint a portion of the Case History Listing. Unless otherwise noted, references to the state court docket in this Memorandum Opinion include both documents.

5. The entry "Plff's Motion for Service Complaint. *Eo Die:* Atty's Affidavit of Reasonable Search" also appears on September 17, 1990.

6. Debtor's counsel in the current chapter 11 proceeding was his bankruptcy attorney at that time.

7. The order of August 31, 1990, was entered to allow substitute service of the complaint and made applicable to the execution and sale of the property. Pennsylvania Rule of Civil Procedure 430 provides that plaintiffs who have been unsuccessful in making service may request a special order from the court directing the method of service. The plaintiff is required to file an affidavit stating "the nature and extent of the investigation which has been made to determine the whereabouts of the defendant and the reasons why service cannot be made." Pa.R.Civ.P. 430(a). *See also* Pa.R.Civ.P. 3129.

that he received this notice. *See* Complaint at ¶ 17. A sheriff's sale was scheduled for September 5, 1995. Debtor filed this chapter 11 on September 1, 1995. Because of the pendency of the bankruptcy case, the sale was continued and rescheduled for October 23, 1995, by oral public announcement at the time and place of the September 5, 1995, sale. Slick obtained relief from stay on October 17, 1995. The sale was conducted on October 23, 1995. The sheriff's deed was executed on January 16, 1996, and recorded on January 17, 1996, all before Debtor filed any motions in this court concerning his alleged lack of notice of the sale. At no time did Debtor seek reconsideration, appeal or attempt to stay any orders of this court or the sale. Under these circumstances, the relief Debtor seeks is moot. *Cf., United States v. Fitzgerald,* 109 F.3d 1339 (8th Cir. 1997) (after foreclosed property is sold to bona fide third-party purchaser, court generally lacks power to craft adequate remedy for debtor). This adversary action was not commenced until December 31, 1996, nearly one year after the deed was recorded and 14 months after relief from stay was granted and the sale conducted. Meanwhile, Debtor again failed to comply with bankruptcy requirements and this chapter 11 case was dismissed by order entered December 21, 1995. It was reopened and reinstated *nunc pro tunc* on January 9, 1996. The case was again dismissed by order dated July 9, 1996, on the United States Trustee's oral motion for failure to comply with court orders. Ten days later, Debtor filed a motion for reconsideration and an order reopening the case was entered on September 6, 1996.[8]

Debtor contends that the continuation of the sale violated the automatic stay, thereby nullifying it, even though the sale was not conducted until after relief from stay was granted. He contends that the sale was held in violation of state rules of civil procedure.

Debtor challenges the order granting relief from stay on the ground that he did not receive notice of the hearing on the motion for relief from stay. We address this last argument first.

■ It is well settled that if a notice is properly addressed and mailed, there is a rebuttable presumption that notice was proper. *In re Rosage,* 189 B.R. 73, 79 (Bankr. W.D.Pa.1995). The certificate of service filed with respect to the motion for relief from stay reflects that the notice and motion for relief from stay were mailed to Debtor at the address of record on the bankruptcy docket, the same address to which all state court notices were mailed. It is Debtor's burden to establish that notice was not properly addressed and mailed; the issue is not whether the notice was received.[9] *Id.* Debtor alleges nothing to rebut the presumption that the notice concerning the motion for relief from stay was properly addressed and mailed. Accordingly, Debtor's challenge to the order granting relief from stay on the ground that he did not receive notice of the hearing or the motion is without merit. Moreover, Debtor does not allege that he did not receive the order granting relief from stay. No appeal or motion for reconsideration was filed at any time.

■ We now address Debtor's contention that the oral postponement of the sale by public announcement violated the stay, thereby voiding the sale. We conclude that under the facts of this case the rescheduling of the sheriff's sale while the creditor promptly pursued a motion for relief from stay is not the type of "continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case," 11 U.S.C. § 362(a), that is prohibited *per se* by § 362 of the Bankruptcy Code. Continuation in the con-

---

**8.** An issue arose during a pretrial conference as to whether the bankruptcy was pending at the time of the sale. The historical review shows that this case was pending when the sheriff's sale took place.

**9.** In his brief in opposition to Slick's motion to dismiss the adversary Debtor notes that he was acting *pro se* when the motion for relief from stay

was served and filed and the order entered. This fact in and of itself is an insufficient basis upon which to grant the relief Debtor is requesting and does not in any way negate the presumption that the notice of the hearing on the motion for relief from stay was properly addressed and mailed, pursuant to the certificate of service filed of record.

text of § 362(a) means to carry forward or persist. WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 305 (1984). The continuance or rescheduling of the sheriff's sale simply maintained the status quo pending further proceedings in the bankruptcy case. *See id.* ("continue ... 3. To cause to remain or last: RETAIN ... 5. ... To postpone or adjourn (a judicial proceeding"). Such continuances often occur in bankruptcy cases but the rescheduled sales do not take place unless and until relief from stay is granted. In *Workingmen's Savings and Loan Association of Dellwood Corp. v. Kestner*, 438 Pa.Super. 186, 652 A.2d 327 (1994), the mortgagors challenged the validity of a postpetition sheriff's sale. The mortgagors contended, as Debtor does here, that the continuation of the sheriff's sale by public announcement to a date certain in accordance with Pa.R.Civ.P. 3129.3(b) violated the automatic stay. The court rejected the argument stating:

> Under the prevailing view, postponing a foreclosure sale is not violative of the automatic stay provisions ... Postponement notices which specify a new sale date merely preserve the status quo between creditor and debtor ... We agree that this is a correct view.... Such a view is

entirely consistent with the protection intended by the automatic stay ...

652 A.2d at 328–29.[10] The court cited *Zeoli v. RIHT Mortgage Corp.*, 148 B.R. 698 (D.N.H.1993), as indicative of the prevailing view. In *Zeoli* the debtors filed a motion to hold the mortgagee in contempt for violating the automatic stay by postponing a foreclosure sale postpetition. The bankruptcy court granted the motion. The district court reversed. The court granted the motion. The district court reversed. The mortgagee had appeared at the scheduled sheriff's sale and postponed it to a date certain as required by New Hampshire law. Subsequently, the bankruptcy court granted relief from stay to the mortgagee. The court examined the legislative history of § 362 and noted that its purpose was to prevent creditors from " 'dismember[ing] ... estates by the foreclosures of liens' [and] lamented the courts' inability, at that time, to halt continuation of foreclosure proceedings ..." 148 B.R. at 699 citing H.R.Rep. No. 137, 93rd Cong., 1st Sess. 16 (1973). While acknowledging that the bankruptcy court's interpretation of § 362 with respect to the postponement of the sheriff's sale had merit, the court noted that

> The primary purposes of the automatic stay provisions are to effectively stop all creditor collection efforts, stop all harass-

---

**10.** Even if postponement of the sheriff's sale violated the stay, the bankruptcy court has "wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay", *In re Siciliano*, 13 F.3d 748, 751 (3d Cir.1994), quoting *In re Schwartz*, 954 F.2d 569, 572 (9th Cir.1992), even though the general rule is that actions taken in violation of the stay are void.

In *Siciliano*, a foreclosure sale was held three days post-petition. Neither the mortgagee nor the sheriff had notice of the filing of the bankruptcy and the Court of Appeals mortgagee's subsequent motion for relief from stay as void, not voidable. The court held that annulment of the stay "validated [the sale] as an exception to the void *ab initio* rule". 13 F.3d at 751. In the matter before us the only act complained of that allegedly violated the stay was the oral announcement at the previously scheduled sheriff's sale of a postponed date. By the time of the actual sheriff's sale, relief from stay had been granted. Annulment of the stay is to be determined on a case-by-case basis. *In re Franck*, 171 B.R. 893, 894 (Bankr.D.Idaho 1994). Under the circumstances of the matter before us, the order

granting relief from stay operated as an annulment because it permitted the foreclosure to proceed. *See also Constitution Bank v. Tubbs*, 68 F.3d 685, 692 & n. 6 (3d Cir.1995) wherein the Court of Appeals for the Third Circuit stated: "Once a stay is in effect ... 'the parties themselves [can-]not validly undertake any judicial action material to the ... claim against' the debtor.... This includes the filing of motions, which are void *ab initio*, unless the bankruptcy court later grants retroactive relief.[6]

> [6] Generally, judicial actions and proceedings against the debtor are void *ab initio* absent relief from stay ... We have, however, recognized that section 362(d), which ... permits such relief to be applied retroactively, would allow the bankruptcy court to grant annulment of a stay, thereby making acts in violation of the stay voidable, rather than void *ab initio*. *See In re Siciliano*, 13 F.3d 748, 750–51 (3d Cir.1994)."

*See also In re Molson*, 1997 WL 133320 (6th Cir.) (March 21, 1997) (after several bankruptcy filings and dismissals, bank foreclosed while automatic stay was in effect; bankruptcy court eventually reopened bankruptcy case and annulled stay retroactively and its ruling was affirmed).

ment of a debtor seeking relief, and to maintain the status quo between the debtor and her creditors, thereby affording the parties and the Court an opportunity to appropriately resolve competing economic interests in an orderly and effective way. *Maintaining the status quo is a repeating theme in decisions construing the automatic stay provisions.*

148 B.R. at 700 (citations omitted) (emphasis added). The court found that the only effect of postponement of a sheriff's sale is to maintain the status quo. In *In re Roach,* 660 F.2d 1316 (9th Cir.1981), the Court of Appeals for the Ninth Circuit held that publication by a mortgagee of several successive notices of postponement of sale after the debtor filed a chapter 11 "maintained the status quo, and did not harass, interfere or gain any advantage. This is consistent with the purpose of the automatic stay provision." 660 F.2d at 1319 (citing *In re Decker,* 465 F.2d 294, 297 (3d Cir.1972)).[11] *Roach* was reaffirmed and applied to repetitious postponements of the foreclosure sale without obtaining relief from stay, despite confirmation of a chapter 13 plan that provided for full cure of arrearages. *In re Peters,* 101 F.3d 618 (9th Cir.1996). In *Peters,* the court decided that confirmation of the plan was not a cure of the default and, until the actual payment of arrears, the debtor was still in default and the creditor was entitled to maintain the status quo.[12]

■ Debtor also takes issue with the fact that the order granting relief from stay was entered only six days before the sheriff's sale took place and that the sheriff's sale was not renoticed. He contends that 30 days' renotice was required under the Pennsylvania Rules of Civil Procedure and was not given. Brief in Opposition to Motion to Dismiss at 7–8. This is incorrect as a matter of law. Rule 3129.2(c)(3) of the Pennsylvania Rules of Civil Procedure provides that:

> If service on any person is not made at least thirty days prior to the date of the sale stated in the notice,[13] such notice shall be deemed timely if the sale is stayed, continued, postponed or adjourned in accordance with Rule 3129.3 to a date certain which is at least thirty days after the date of the last required service.

Timely service was made in accordance with the May 31, 1995, and August 31, 1990, orders.

Rule 3129.3 provides that new notice under Rule 3129.2 is required unless

> the sale is stayed, continued, postponed or adjourned to a date certain within one hundred days of the scheduled sale, and public announcement thereof, including the new date, is made to the bidders assembled at the time and place originally fixed for the sale ...

In the instant case, no new notice was required because the sheriff's sale was continued at the September 5, 1995, scheduled date to a date that was more than 30 days after the last required notice and within 100 days of the scheduled sale. Public announcement of the postponement, including the new date, was announced to those present. In the matter before us the Pennsylvania Rules were adhered to. Additional service was not required. The oral continuation was proper under state law. The fact that Debtor chose not to attend the sale on its initial date, September 5, 1995, and thus did not hear the announcement is of no consequence. The postponement is to assure notice to *bidders* at the sale of the time and place of the new

---

**11.** While *Decker* addressed the issue of whether, under the Bankruptcy Act of 1898, the bankruptcy court could summarily decide the question of ownership of real estate subject to state foreclosure proceedings, the court noted that the stay is "in the nature of [a] temporary injunction[ ] designed to maintain the status quo". 465 F.2d at 297.

**12.** In *Constitution Bank v. Tubbs,* 68 F.3d 685 (3d Cir.1995), the court noted that the purpose of the automatic stay is to protect the debtor from, *inter alia,* initiating or prosecuting foreclosure

actions. 68 F.3d at 691. However, the postponement and rescheduling of a sheriff's sale in accordance with state rules of civil procedure for the purpose of obtaining relief from stay without more is not "initiating or prosecuting" an action, but is merely maintaining its posture until the bankruptcy court can rule on a motion for relief from stay.

**13.** The notice referred to is that required in Rule 3129.2(a) which provides that notice of a sale "shall be given by handbills ..., by written notice ..., and by publication...."

sale. Debtor's election not to appear was his choice and does not rise to the level of a creditor's violation of debtor's right to due process.

Debtor also challenges the May 31, 1995, order of the Court of Common Pleas of Westmoreland County permitting substitute service by reconfirming *nunc pro tunc* the prior order of August 31, 1990,[14] allowing substitute service.[15] Once again, we find Debtor's argument to be without merit. Rule 3129.3(a) provides that "[e]xcept as provided by subdivision (b) *or special order of court*, new notice shall be given as provided by Rule 3129.2 if a sale of real property is stayed, continued, postponed or adjourned." (Emphasis added.) In the matter before us, the order of August 31, 1990, which was reconfirmed by the May 31, 1995, order, constituted the "special order of court" referred to in Rule 3129.3(a). *See* Westmoreland County Civil System Case History Listing entry dated June 1, 1995, Complaint Exhibit C. The Explanatory Comment to the Rule states that the provision concerning special orders "gives the court discretion to allow postponement of the sale without new notice in appropriate cases." In the matter before us the sale had been rescheduled several times since the original 1990 date, in accordance with the Pennsylvania Rules of Civil Procedure.[16] Furthermore, Debtor admits

that he received notice of the sheriff's sale scheduled for September 5, 1995. Rule 3129.2(c)(1)(C) provides, in pertinent part:

if service cannot be made as provided in subparagraph (A) [handbills, written, publication] or (B) [posting], the notice shall be served pursuant to special order of court as prescribed by Rule 430, *except that if original process was served pursuant to a special order of court* under Rule 430 upon the defendant in the judgment, *the notice may be served upon that defendant in the manner provided by the order for service of original process without further application to the court.*

Pa.R.Civ.P. 3129.2(c)(1)(C) (emphasis added). Thus, the notice pursuant to the May 31, 1995, order relative to the September 5, 1995, sale was sufficient and Debtor's implication that the notice was somehow defective because the order was issued before Slick applied for reissuance of the writ is without merit. *See* Pa.R.Civ.P. 3121(f), 3183(f) and n. 15, *supra*.

We find that postponement of the sheriff's sale to a date certain did not violate the stay under the circumstances of this case and that the sale comported with the Pennsylvania Rules of Civil Procedure. Count I of the complaint will be dismissed and judgment will be entered in favor of Slick.[17]

---

**14.** Debtor's brief states the date of the prior order as April 31, 1990. We think this is a typographical error. The docket attached to his complaint and that attached to Slick's motion to dismiss show the August date. Moreover, April has only 30 days.

**15.** In his complaint Debtor notes the fact that Slick obtained the May 31, 1995, order without having sought reissuance of the Writ of Execution. The Westmoreland County Court of Common Pleas docket shows that a Praecipe to Reissue the Writ of Execution was filed on August 22, 1994. The writ was reissued and served. The sale was advertised and Debtor filed the initial bankruptcy case in February of 1995, staying the execution. That bankruptcy was dismissed, also in February of 1995. The order of May 31, 1995, predated the Praecipe to Reissue the Writ filed on June 7, 1995. However, Rule 3106(b) provides that "[a] writ may be reissued at any time, and any number of times, by endorsement thereon by the prothonotary of the word 'reissued'". Rule 3121(f) provides that "[a]fter the termination of a stay, sale may be had without reissuance of the writ." *See also* Pa.R.Civ.P. 3183(f)

("[a]fter the termination of a stay, execution may proceed without reissuance of the writ"). Thus, Slick was not required to have the writ reissued, even though he did so.

**16.** Pa.R.Civ.P. 3183 provides that "(a) Execution shall be stayed ... (1) upon written direction of the plaintiff to the sheriff.... (f) After the termination of a stay, execution may proceed without reissuance of the writ." In the matter before us Slick filed Praecipes for reissuance of the Writ and amended affidavits under Pa.R.Civ.P. 3129.1 in 1993 and 1994.

**17.** The motion avers that the issues Debtor raises concerning foreclosure and the sheriff's sale were or could have been litigated in the state court proceeding. The state court docket reflects that the foreclosure judgment was entered by default, not after a trial on the merits. Nonetheless, the judgment was entered six and one-half years ago and was never challenged in the state courts. Thus, any challenge now is time barred. Moreover, Debtor does not mount a challenge now. He simply contends that the sheriff's sale

1003

Count VI concerning equitable recoupment also will be dismissed inasmuch as Debtor does not state a claim upon which the relief he seeks can be granted. He merely alleges that Slick's livestock destroyed his crops and that Slick failed to "adjust[ ] his current alleged claim to account for the damages caused by his livestock." Complaint at ¶ 53. Debtor does not allege an amount of damages or a time period in which the events occurred, but simply requests recoupment. However, Slick has not filed a claim in this case. Thus, no recoupment can be granted.

As stated earlier in this Memorandum Opinion, the allegations concerning wheat and straw in the remaining counts cannot be disposed of on the Motion to Dismiss. Therefore, an answer will be required.

An appropriate order will be entered.

was void because it was continued to a date that was postpetition. We have rejected this argument.