In re Edward T. ROCHE and Dolores J. Roche, Debtors.

Edward T. Roche and Dolores J. Roche, Plaintiffs,

v.

Franklin First Federal Savings Bank and Charles J. Dehart, III, Esq., Chapter 13 Trustee, Defendants.

Bankruptcy No. 5–97–02451.
Adversary No. 5–97–00336A.

United States Bankruptcy Court,
M.D. Pennsylvania,
Wilkes–Barre Division.

Dec. 18, 1998.

Joseph Murray, Wilkes–Barre, PA, for debtors/plaintiffs.

Ernest Sposto, Rosenn, Jenkins & Greenwald, Wilkes–Barre, PA, for defendant.

Charles J. DeHart, III, Chapter 13 Trustee, Hummelstown, PA.

## OPINION

JOHN J. THOMAS, Bankruptcy Judge.

The parties have attempted to simplify the issue before me by stipulating that the undisputed facts can be culled from a review of the

Statement of Material Facts submitted by the Defendant, Franklin First Federal Savings Bank, now by merger Manufacturers and Traders Trust Company, ("Bank"), filed September 2, 1998, and the Plaintiffs' Response filed October 8, 1998. (Transcript of October 21, 1998 at 20 (Doc. # 26A)). Those relevant facts are as follows. The Bank is a mortgagee of the Plaintiffs having extended a loan secured by real estate on January 30, 1987. Because of a default, the Bank obtained a judgment in mortgage foreclosure in the Monroe County Court on April 13, 1995. The Plaintiffs, or either of them, had filed several bankruptcies during the relevant time period which had delayed, and now complicated, the Bank's liquidation efforts. Two days prior to the Sheriff's Sale scheduled at the behest of the Bank, Dolores Roche filed a third bankruptcy case at case number 5–96–00139. The sale was scheduled for July 25, 1996. Ms. Roche's filing occurred July 23, 1996.

Since the sale could not take place by reason of the automatic stay, the Bank implemented Pennsylvania Rule of Civil Procedure 3129.3(b) by announcing at the sale that it had been continued to a period within 100 days of the scheduled date i.e., October 31, 1996. That announcement was made orally at the time and date of sale to the bidders assembled. Neither the Debtors nor anyone on behalf of the debtors was present at that time.

Within one month of her bankruptcy filing, Dolores Roche's pending bankruptcy was dismissed by reason of her failure to file schedules, statements and a chapter 13 plan. That dismissal occurred by reason of a court management procedure, since declared invalid in an unrelated case. *In re General Order Governing Dismissal of Cases, Imposition of Sanctions for Incomplete Filings (Standing Motion of U.S. Trustee to Dismiss Bankruptcy Cases)*, 210 B.R. 941, 943–44 (Bankr. M.D.Pa.1997).

The bankruptcy case having been dismissed, the Bank proceeded to sell the Plaintiffs' real property at the sale scheduled October 31, 1996, ostensibly in accordance with applicable Rules of Civil Procedure. Notwithstanding the Bank's purported compli-

ance with applicable procedure, the Debtors, because they were not present at the time of the continuance, were not aware of the continued sale date prior to the Sheriff's Sale.

The Plaintiffs have alleged three causes of action by reason of these facts as enunciated.

The first cause of action requests damages for a violation of the automatic stay which the Plaintiffs say occur by reason of the Bank's oral postponement of the sale from July 25, 1996 to October 31, 1996. The Plaintiffs assert that this oral announcement was in clear violation of the automatic stay, while the Bank defends by arguing that such postponement was in compliance with applicable state and federal law.

Count II of the Plaintiffs' Complaint seeks to avoid the fraudulent conveyance created by reason of the transfer of this real estate for less than a reasonably equivalent value since the sale was not "properly conducted under state and federal law." The Plaintiffs assert that the requirements of Pennsylvania foreclosure law incorporate their "right to due process." (Plaintiffs' Response to Statement of Material Facts as to Which There is no Genuine Issue to be Tried at ¶ 14 (Doc. # 21A)).

Plaintiffs' third Count attempts to avoid the transfer of the real estate since the announcement of the sale date occurred while the automatic stay was in place and thus was void and, therefore, could not support the foreclosure sale.

### Discussion

At the outset, the Court has been impressed with the sheer volume of authority that supports the Bank's position. As to whether the postponement of a sale in accordance with state law procedure during the pendency of the automatic stay is a violation of the automatic stay, every court that has studied this specific issue (and not been reversed) has found no violation. *Workingmen's Savings and Loan Association of Dellwood Corp. v. Kestner*, 438 Pa.Super. 186, 652 A.2d 327 (1994); *In re Peters*, 101 F.3d 618 (9th Cir.1996); *In re Roach*, 660 F.2d 1316, 1319 (9th Cir.1981); *In re Fritz*, 225 B.R. 218 (E.D.Wash.1997); *Zeoli v. RIHT*

*Mortgage Corp.,* 148 B.R. 698 (D.N.H.1993); *In re Tome,* 113 B.R. 626, 630–632 (Bkrtcy. C.D.Cal.1990); *In re Barnes,* 119 B.R. 552, 556 (S.D.Ohio 1989); *In re Taylor* 207 B.R. 995, 999 (Bankr.W.D.Pa.1997); *In re Stober,* 193 B.R. 5 (Bankr.D.Ariz.1996); *In re Doud,* 30 B.R. 731, 733–734 (Bankr.W.D.Wash. 1983). Indeed, those courts that would support a cancellation of the sale have done so, not on the grounds that the postponement is a violation of the automatic stay, but for the reason that the due process rights of the defendant have been violated by inadequate notice. *In re Duncan,* 211 B.R. 42 (Bankr. D.Ariz.1997); *In re Acosta,* 181 B.R. 477 (Bankr.D.Ariz.1995).

■ Regardless of how this Court ultimately rules relative to the issue as to whether postponing the date of the Sheriff's Sale after the bankruptcy is filed, is a violation of the automatic stay, it is clear that there is a considerable amount of "persuasive legal authority" supporting the position of the Bank. Even if the Bank may have willfully violated the automatic stay by intentionally performing the act, i.e., postponing the sale, after knowledge of the bankruptcy, an exception to the assessment of damages for a violation of the automatic stay has been recognized by our Third Circuit Court of Appeals where a creditor's actions are consistent with "contemporaneous interpretations of Section 362." *In re University Medical Center,* 973 F.2d 1065, 1088 (3rd Cir.1992).

Whether I find a violation of the automatic stay occurred, I must conclude that no damages are assessable by reason of the rather ample case law supporting the Bank's position.

■ With regard to Count II of the Plaintiffs' Complaint, I must again hold for the Defendant inasmuch as the Supreme Court, in the case of *BFP v. Resolution Trust Corporation,* 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), has concluded that a foreclosure sale complying with state law is not a fraudulent conveyance.

■ An adjudication of Count III, however, requires this Court to consider the Plaintiffs' arguments and decide specifically as to whether the stay was violated by postponing the sale.

11 U.S.C. § 362(a) sets the parameters for the automatic stay[1]. The stay is a fundamental safeguard protecting the debtor during the bankruptcy. *University Medical Center v. Sullivan (In re University Medical Center),* 973 F.2d 1065, 1074 (3d Cir.1992). Its provisions are broadly stated. *In re Computer Communications, Inc.,* 824 F.2d 725, 729 (9th Cir.1987)[2]. Its reach, however,

1. Section 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

2. "According to the legislative history, the purpose of the automatic stay is to give the debtor a breathing spell from creditors, to stop all collection efforts, and to permit the debtor to attempt repayment or reorganization. S.Rep. No. 989, 95th Cong., 2d Sess. 54–55, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5840–41. Congress intended the scope of the stay to be broad. 'All proceedings are stayed, including arbitration, license revocation, administrative, and judicial proceedings. Proceeding in this

is not unlimited. In discussing an earlier version of the stay, our Circuit pointed out that its purpose was to maintain the status quo. *In re Decker*, 465 F.2d 294, 297 (3rd Cir.1972).

The Bank utilized the provisions of the Pa.R.C.P. 3129.3 to postpone its foreclosure sale from July 25, 1996 to October 31, 1996 by public announcement at the time of sale. In doing so it was able to avoid the $2000 to $3000 expense associated with re-advertising. (Transcript of October 21, 1998 at 31 (Doc. # 26A)). As of July 25, 1996, the only Pennsylvania authority to have reviewed the issue of whether this action was a violation of the automatic stay has determined that it was not. *Workingmen's Savings and Loan Association of Dellwood Corp. v. Kestner*, 438 Pa.Super. 186, 652 A.2d 327 (1994). Had the debtor[3] been aware of this case she most certainly would have arranged to inquire as to the rescheduled date.

*Workingmen* adopted the analysis of earlier federal cases dealing with the issue. Relying on legislative history, it simply did not find that a postponement of a sale date pursuant to state law was either a collection effort, creditor harassment or the advancement or continuation of a foreclosure action. The Pennsylvania Superior Court could ascertain no advantage over the debtor achieved by the creditor implementing the state law provision for a one time continuance. In the same vein, neither can this Court perceive of any disadvantage to these Debtors by requiring that they be aware of the current state of the law and be mindful of the continued sale date. It is on this basis that I register my agreement with those courts that have found no violation of the automatic stay under these circumstances.

█ Even should there have been some injustice by reason of the circumstances of the sale, nothing prevented raising this issue before the county court under Pa.R.C.P. 3132, once the Debtors became aware of the sale. The Debtors, however, took a different approach. Even assuming that they first became aware of the foreclosure sale at about the time of Bank counsel's correspondence to Debtors' lawyer on January 3, 1997, (Appendix of Plaintiffs to Accompany Brief in Opposition to Franklin's Motion for Summary Judgment filed 10/8/98, Document I at 27 (Doc. # 23A)), they certainly were able to raise a lack of adequate notice at the state court ejectment proceeding commenced February 28, 1997. (Complaint for Damages for Violation of Automatic Stay and to Avoid a Fraudulent Conveyance of 9/11/97 at ¶ 39.) In fact, Monroe County entered judgment in ejectment on August 13, 1997. (Appendix of Plaintiffs to Accompany Brief in Opposition to Franklin's Motion for Summary Judgment filed 10/8/98, Document J at 29 (Doc. # 23A)). It was only thereafter, on August 25, 1997, that a bankruptcy was commenced by the Debtors. This Complaint followed on September 11, 1997.

Black's Law Dictionary defines due process as requiring those "parties whose rights are to be affected are entitled to be heard and, in order that they may enjoy that right, they must be notified." Even should the Debtors' absence from attending the initially scheduled foreclosure sale be overlooked, there appears to have been ample opportunity to have raised the issue of inadequate notice during the ejectment litigation. Not having done so, I can only conclude that the Debtors have waived that claim.

I find no cause of action with regard to the third Count of Debtor's Complaint.

---

sense encompasses civil actions as well, and all proceedings even if they are not before governmental tribunals.' H.R.Rep. No. 595, 95th Cong., 2d Sess. 340 reprinted in 1978 U.S.Code Cong. & Admin. News 5963, 6297."

**3.** Only the female debtor, Dolores J. Roche had filed bankruptcy at the time of the initial foreclosure sale date.